682 A.2d 286

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James CROMPTON, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 22, 1996.

Decided Aug. 21, 1996.

Robert M. Rosenblum, Stroudsberg, for James Crompton.

Curtis J. Rogers, James P. Gregor, Stroudsberg, for Commonwealth,

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NEWMAN, Justice.

James Crompton (Crompton) appeals from an Order of the Superior Court affirming his conviction for possession of marijuana[1] and possession of marijuana with intent to deliver.[2] We reverse.

Our analysis of the question before us is twofold; whether the police complied with the knock and announce rule, and if they did not, whether the evidence seized during the search should be suppressed.

On August 26, 1992, Pennsylvania State Troopers arrived at Crompton's home to execute a search warrant. The facts

1. 35 P.S. § 780–113(a)(16).
2. 35 P.S. § 780–113(a)(30).

presented at trial establish that Crompton's front door was open, leaving only an unlocked screen door between the troopers and the one visible occupant, Richard Homar. Crompton, although not visible to the troopers, was in the living room with Homar. The troopers rang the doorbell, announced their presence, opened the screen door and entered the front hall of Crompton's home. After entering, the troopers found four marijuana cigarettes on a coffee table in the living room and a silver object containing marijuana on the floor. The troopers also discovered five and one-half pounds of marijuana, several water bongs, a pipe, plastic bags and a triple beam scale. Immediately, the troopers arrested Crompton, charging him with violating the Controlled Substance, Drug, Device and Cosmetic Act.[3] The case went to trial in the Court of Common Pleas of Monroe County (trial court).

The trial court denied Crompton's Omnibus Pre-trial Motion seeking to suppress the evidence obtained during the search. Following a bench trial, Crompton was convicted of possession of marijuana and possession of marijuana with intent to deliver. Crompton filed post-trial motions asserting that the search of his home violated the "knock and announce rule" mandated by Pa.R.Crim.P. 2007. The trial court denied the motion, holding that the police lawfully entered Crompton's home because evidence was going to be destroyed and no occupant responded to their announcement.

On appeal, the Superior Court disagreed and held that the police violated the knock and announce rule. However, the Superior Court refused to suppress the seized evidence, holding the troopers sufficiently respected Crompton's privacy interests during the search and, therefore, suppression was unwarranted. We agree with the Superior Court's conclusion that the police violated the knock and announce rule, but hold that the seized evidence must be suppressed.

■ The standard of review of an appeal from a suppression ruling is limited to determining whether the findings of

---

**3.** Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101—780–144.

fact are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539 (1991).

■■■ The purpose of the knock and announce rule is to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against the unauthorized entry of unknown persons, and to prevent property damage resulting from forced entry during the execution of a search warrant. *Commonwealth v. McDonnell*, 512 Pa. 172, 516 A.2d 329 (1986). Pa.R.Crim.P. 2007 sets forth the manner in which a police officer may enter a premises to execute a search warrant:

### RULE 2007. MANNER OF ENTRY INTO PREMISES

(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcible entry.

(b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.

(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Consequently, even with a search warrant, police officers must knock, announce their identity and purpose and then wait a reasonable amount of time for the occupants to respond before entering any private premises.[4]

**4.** Article I, Section 8 of the Pennsylvania Constitution guarantees that people shall be secure from unreasonable searches of their houses. As this was Crompton's house, despite the open front door and unlocked screen door, Crompton was fully protected from an unlawful search. It is the nature of the premises, not the door to the premises, that triggers the protections of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the U.S. Constitution.

■ In *Commonwealth v. Means,* 531 Pa. 504, 614 A.2d 220 (1992), this Court identified the following four circumstances in which police may enter without complying with the knock and announce rule:

1. the occupants remain silent after repeated knocking and announcing;

2. the police are virtually certain that the occupants of the premises already know their purpose;

3. the police have reason to believe that an announcement prior to entry would imperil their safety; and

4. the police have reason to believe that evidence is about to be destroyed.

*Commonwealth v. Means,* 531 Pa. at 508, 614 A.2d at 222–223.

■ During a suppression hearing, the Commonwealth has the burden of proving that the police seized evidence in a way that did not violate the defendant's constitutional rights. Pa. R.Crim.P. 323(h); *Commonwealth v. Silo,* 480 Pa. 15, 389 A.2d 62 (1978). The Commonwealth can satisfy its burden by establishing either that the police complied with the knock and announce rule or that the circumstances satisfied an exception.

■ Regarding the instant matter, the Commonwealth sought to establish that the police entered Crompton's home under an exception to the knock and announce rule.[5] At the September 1, 1992 preliminary hearing, the Commonwealth presented only one witness, a trooper who executed the search warrant. At trial on March 11, 1993, the Commonwealth introduced a transcript of the trooper's preliminary hearing testimony. The Commonwealth did not produce any additional testimony to describe the events surrounding the execution of the search warrant.

The trooper provided contradictory accounts of his entry into Crompton's home. First, on direct examination, the

5. In its brief, the Commonwealth acknowledges that the period of time between the initial announcement and the police entry is unclear. Therefore, the Commonwealth argues that an immediate entry would have in fact been legal because it would have fallen within an exception to the knock and announce rule.

trooper testified that he could see Homar sitting inside the house through the screen door, and Homar did not move until after the trooper entered the hallway. Similarly, on cross-examination, the trooper repeated that he only entered the premises after the occupants did not move in response to the doorbell. This testimony supports the Commonwealth's theory that the circumstances fall within the first exception to the knock and announce rule, permitting police entry if occupants remain silent after repeated knocking and announcing.

However, later during cross-examination, the trooper gave a different description of Homar's conduct in response to the doorbell. The trooper testified that Homar moved from the sofa toward the kitchen after the doorbell rang. The trooper explained that the officers entered Crompton's home because Homar was moving away from them.[6] These facts support the fourth exception to the knock and announce rule, which permits police entry based on a reasonable belief that evidence is about to be destroyed.[7]

Thus, our review of the trooper's testimony reveals that he testified that Homar did not react, which is consistent with the first exception, and then testified that Homar fled, which is consistent with the fourth exception. Homar, however, could not have simultaneously remained seated and fled.

6. The trial court concluded that the police presumed Homar was heading to the kitchen to destroy evidence. However, our review of the transcript does not reveal that the trooper testified that he or any other trooper suspected Homar was heading to the kitchen to destroy evidence.

7. Albeit that neither party argued that the second exception applies to this case, the dissenting opinion states, "[a]lthough the record is not well developed, it appears that the second exception to the knock and announce rule set forth in *Commonwealth v. Means*, 531 Pa. 504, 508, 614 A.2d 220, 222 (1992), that the police are virtually certain that the occupants of the premises already know their purpose, applies in this situation." The dissenting opinion adopts one version of the police officer's testimony; "[t]he officers were separated from appellant and the other occupants of the house only by a screen door through which they could see one of the occupants move away from the door when the police rang the bell and identified themselves as police." This recitation of the facts disregards the trooper's contradictory testimony that the occupants did not react to the doorbell. Our review of the record does not permit such an interpretation of the officer's testimony.

■  The law in Pennsylvania is well settled that "when a party on whom the burden of proof rests, in either a civil or criminal case, offers evidence consistent with two opposing propositions, he proves neither." *Commonwealth v. Woong Knee New*, 354 Pa. 188, 221, 47 A.2d 450, 468 (1946); *See Commonwealth v. Trudell*, 371 Pa.Super. 353, 538 A.2d 53 (1988).

The trooper's versions of his entry are mutually exclusive. Either no one responded to the doorbell, so the trooper entered the hallway and saw Homar get up from the sofa, or the trooper saw Homar move to the kitchen from his vantage point outside the house and then entered to prevent Homar from destroying evidence.  The Commonwealth produced no testimony to explain this inconsistency.  The trial court held the testimony established both the first and the fourth exception to the knock and announce rule.  The Superior Court held that the Commonwealth, as a result of this mutually exclusive testimony, failed to establish either exception.[8]  We agree.[9]

■  However, the Superior Court erred when it found that although the police search violated the knock and announce rule, it was not required to suppress the evidence seized.  We held in *Chambers* and *Means*, and we reaffirm today, that the appropriate remedy for a violation of the knock and announce rule is to exclude the evidence discovered during an unconstitutional search.

■  In *Chambers*, this Court held "[t]he fundamental constitutional concern implicated by the police officers' failure to comply with the knock and announce rule is the prohibition against unreasonable searches and seizures under Article I, § 8 of the Pennsylvania Constitution." *Chambers*, 528 Pa. at

8.  We do not hold here that the first and fourth exceptions to the knock and announce rule are mutually exclusive, rather that the Commonwealth's evidence in this case is mutually exclusive and cannot sustain either exception.

9.  Due to the Commonwealth's failure to produce consistent evidence in this case, we are precluded from considering whether the trooper's conduct here in fact satisfies the knock and announce rule or any of the four exceptions to that rule.

410, 598 A.2d at 542. As suppression is the appropriate remedy for all violations of fundamental constitutional concerns, we held that "a finding that the police's deliberate execution of a search warrant violated Rule 2007 dictates the conclusion that the fruits of the unlawful search should have been suppressed." *Id.*

Instead here, the Superior Court concluded,

> [w]hen a visitor comes to a house in August and encounters an open front door and unlocked screen door, it is not unusual to knock at the door, announce one's presence and enter.... But by leaving the front door open, Crompton evidenced less of a concern for keeping out those with a license or right to enter. We therefore hold that while the troopers did violate the knock and announce rule, their entry into Crompton's home showed sufficient regard for his constitutionally protected privacy interests. Since the troopers acted in good faith and otherwise conducted themselves properly, suppression is not justified.

*Commonwealth v. Crompton,* 439 Pa.Super. 665, 653 A.2d 1298 (1994). However, the protections of the Fourth Amendment do not vary with the seasons or the weather. In violating the knock and announce rule, the police infringe upon a fundamental constitutional concern, Article I, Section 8's guarantee that all Pennsylvanians will be free from unreasonable searches of their houses. Regardless of the type of front door to a premises, the remedy for noncompliance with the knock and announce rule is always suppression. The Superior Court's decision not to suppress the seized evidence is in direct conflict with our opinions in *Chambers* and *Means.* We conclude, therefore, that the Superior Court was in error when it found the police violated the knock and announce rule but did not suppress the seized evidence.

**Accordingly, we reverse the** Order of the Superior Court, **vacate** the judgment of sentence, and **grant** Crompton a new trial.

596

NIX, Former C.J., did not participate in the decision of this case.

CASTILLE, J., files a dissenting opinion.

CASTILLE, Justice, dissenting.

I respectfully dissent. Although the record is not well developed, it appears that the second exception to the knock and announce rule set forth in *Commonwealth v. Means,* 531 Pa. 504, 508, 614 A.2d 220, 222 (1992), that the police are virtually certain that the occupants of the premises already know their purpose, applies in this situation. The officers were separated from appellant and the other occupants of the house only by a screen door through which they could see one of the occupants move away from the door when the police rang the bell and identified themselves as police. That response to the presence of police at the door indicates that the police, who were wearing black jackets with the words "State Police" written across the front in large yellow letters, were most likely visible to the occupants and that the occupants of the house already knew the officers' purpose. *Id.* at 508, 614 A.2d at 222. Therefore, I would affirm the order of the Superior Court.