J-S38023-15

2015 PA Super 206

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| HYSON E. FREDERICK | |
| Appellant | No. 1103 MDA 2014 |

Appeal from the Judgment of Sentence entered February 4, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at Nos: CP-41-CR-0000355-2012 and
CP-41-CR-0001445-2012

BEFORE: WECHT, STABILE, and MUSMANNO, JJ.

OPINION BY STABILE, J.: **FILED SEPTEMBER 25, 2015**

Appellant Hyson E. Frederick[1] appeals from the February 4, 2014 judgment of sentence entered in the Court of Common Pleas of Lycoming County ("trial court"), after the jury convicted Appellant of multiple robbery, burglary, and other offenses. Upon review, we vacate and remand.

The facts and procedural history underlying this appeal are uncontested.[2] Detective Curtis Loudenslager, assigned to Lycoming County

---

[1] The docket indicates Appellant's proper last name is Frederick and not Fredericks. **See** Trial Court Order, 1/22/14. Accordingly, we have amended the caption to reflect the correct last name.

[2] Unless another source is cited, the facts are taken from the trial court's Pa.R.A.P. 1925(a) Opinion, 12/23/14, at 1-4.

Domestic Relations, attempted to serve upon Appellant a notice of a contempt hearing. N.T. Suppression, 11/1/12, at 8-9. In the process of locating Appellant, Detective Loudenslager discovered Appellant resided with Miranda Welsh ("Welsh"). *Id.* at 10. A background check on Welsh revealed that she had an outstanding bench warrant in Clinton County relating to child support. *Id.* It also revealed that the "Lycoming County Adult Probation had a warrant for her arrest." *Id.* Eventually, Loudenslager identified an address where Appellant and Welsh were believed to be residing. *Id.* at 10-11. Accompanied by Lycoming County Deputy Sheriff Eric Spiegel, Loudenslager went to the address to serve the arrest warrant and the contempt hearing notice upon Welsh and Appellant, respectively. *Id.* at 11.

Spiegel and Loudenslager knocked on the back door of the residence several times but there was no answer. Loudenslager believed he could hear someone in the residence. Spiegel and Loudenslager then went to the main or common entrance of the building and knocked on the front door several times and there still was no answer. Spiegel, however, observed that Appellant and Welsh had their names on the mailbox for the residence. Spiegel and Loudenslager then returned to the back entrance that was directly attached to the residence and began to knock again. Spiegel realized that the door was locked but it could be pushed open. He opened the door and noticed that a television was on.

Before entering the residence, however, he and Loudenslager announced that they were law enforcement and that they had a warrant. They then began searching the residence room-by-room for Welsh. When they got to a rear bedroom with its door ajar, they realized someone was inside. They announced their presence again, but still received no response. Spiegel then opened the bedroom door and saw Welsh and young children lying on a bed. When Spiegel opened a closet door to see if anyone was hiding in it, he observed a sawed-off shotgun leaning against a pile of clothes. Given the discovery of the sawed-off shotgun in Appellant's residence, and Appellant's prior criminal record, Appellant was charged with persons not to possess a firearm (18 Pa.C.S.A. § 6105(a)(1)), and prohibited offensive weapons (18 Pa.C.S.A. § 908(a)) at docket number 355-2012 ("First Case").

Thereafter, in connection with a December 11, 2011 home-invasion robbery, Appellant was charged with multiple offenses, including robbery, burglary, theft by unlawful taking, receiving stolen property and simple assault, at docket number 1445-2012 ("Second Case"). The sawed-off shotgun recovered in Appellant's residence also was used as evidence in the Second Case.

Appellant was represented by different attorneys in both cases. In the First Case, Appellant filed a motion to suppress the sawed-off shotgun, arguing that the search itself was unconstitutional as it was not supported by probable cause. The trial court denied Appellant's suppression motion. A

few months later, with respect to the Second Case, Appellant filed a motion to suppress the sawed-off shotgun, arguing that Detective Loudenslager and Deputy Spiegel violated the knock and announce rule. The trial court conducted a suppression hearing, at which the Commonwealth presented the testimony of Detective Loudenslager and Deputy Spiegel. Loudenslager testified that he, in plain clothes, and Spiegel, in his sheriff's department uniform, arrived at the address and approached the front door of the building but it was locked. *Id.* at 12, 14-15. Loudenslager also testified that upon reaching the front door Spiegel indicated to him that both Appellant's and Welsh's names appeared on the mailbox for the residence. *Id.* at 12.

Loudenslager testified that he and Spiegel then went up a fire escape to a direct entrance to the residence. *Id.* at 13. Loudenslager testified that they knocked on the door loud enough that someone inside would have heard. *Id.* at 18. He also testified that, although he could not see inside, he heard someone move and turn the lock on the door, which he relayed to Spiegel. *Id.* at 13-15. Loudenslager testified that they knocked several more times but there was no response. *Id.* at 14. Loudenslager further testified that he then left Spiegel at the backdoor and returned to the front door to attempt to contact a neighbor. *Id.* at 15. He was unsuccessful in his attempt. *Id.*

Loudenslager also testified that Spiegel, still at the backdoor, alerted him that he had an open door, so Loudenslager returned to the backdoor.

*Id.* at 16. He testified that the officers, from outside the apartment, scanned the room but it was empty. *Id.* Loudenslager testified that the officers announced several times who they were, that they were coming in, and that they had a warrant. *Id.* at 17. Loudenslager testified that the officers then entered the residence and began to clear the apartment. *Id.* at 18.

On cross-examination, Loudenslager acknowledged that he could not say with any certainty whether someone looking from inside the residence could see the officers on the fire escape. *Id.* at 30.

Next, the Commonwealth presented Deputy Spiegel's testimony. Spiegel testified that he and Loudenslager knocked on the back door multiple times, loud enough that someone inside would have heard, but there was no answer. *Id.* at 36. Spiegel also testified that at that time Loudenslager indicated he heard someone inside of the apartment, Spiegel was wearing an ear bud radio and could not hear anyone within. *Id.* at 38-39.

Spiegel testified that the officers then attempted to look in the windows but could not see inside so they proceeded to the building's main entrance. *Id.* at 37. He testified that they could not gain entry through the main entrance because it was a locked common entrance for the entire building; however, while at the front door Spiegel observed Appellant's and Welsh's names on the mailbox for the residence. *Id.* Spiegel testified that the officers then returned to the back door. *Id.* Spiegel testified that he

- 5 -

reached the back door first, began to knock, and quickly realized that, although the door was locked, if he simply pushed the door would open. *Id.* at 37. Spiegel testified that he did push the door open and, while outside the residence, announced either "police warrant" or "sheriff's warrant" but no one replied. *Id.* at 40-41. Spiegel testified that upon opening the door he did not see anyone, but the TV was on and muted. *Id.* at 41. He testified that after his initial assessment, he announced again, and he and Loudenslager entered the apartment, and began to search it room-by-room for Welsh. *Id.* at 42.

Following the hearing, the trial court denied the suppression motion in the Second Case. In so doing, the trial court concluded that, even though a violation of the knock and announce rule occurred, it did not trigger suppression of the sawed-off shotgun.[3] The trial court reasoned:

> Despite the technical violation of knock and announce by Spiegel and Loudenslager, the [c]ourt finds it does not trigger exclusion as an appropriate remedy. The entry does not appear to raise fundamental constitutional concerns such as expectation of privacy and was not done in bad faith. Spiegel announced his identity and purpose prior to entering the threshold of the apartment and also entering the bedroom. Moreover, in regards to the purpose of the knock and announce rule, the entry did not result in injury to an individual or property. . . .

---

[3] The record indicates that Appellant filed a second suppression motion titled "Motion to Suppress *Nunc Pro Tunc*" in the First Case. Appellant sought to suppress the sawed-off shotgun on the basis of a knock and announce rule violation. N.T. Suppression, 11/1/12, at 7. The trial court, however, denied Appellant's "*nunc pro tunc*" suppression motion and Appellant does not challenge its denial in the appeal *sub judice*. Accordingly, this appeal concerns only the suppression issue raised in the Second Case.

> [T]he violation of the knock and announce rule was merely a technical non-compliance. Spiegel and Loudenslager knocked repeatedly on the backdoor and announced their presence prior to crossing the threshold of the apartment.

Trial Court Opinion, 12/11/12, at 6-7.

Both cases were consolidated for trial.[4] On October 31, 2013, a jury found Appellant guilty of prohibited offensive weapons in the First Case and burglary, robbery, theft by unlawful taking, among others, in the Second Case. After trial, Appellant pled guilty to the outstanding, severed charge of persons not to possess a firearm in the First Case.[5] On February 4, 2014, the trial court sentenced Appellant to an aggregate of 25 to 50 years' imprisonment for both cases. Appellant timely appealed to this Court. Appellant filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, arguing that the trial court erred in denying his motion to suppress the sawed-off shotgun in the Second Case. The trial court filed a Pa.R.A.P. 1925(a) opinion, incorporating its opinions issued in response to Appellant's respective suppression motions.

_____

[4] Despite the consolidation, the two cases remain separate and independent from one another.

[5] It is worth noting that, even if Appellant had preserved a knock and announce challenge in the First Case, the outcome of this appeal, which is limited to the issue of suppression, would not affect Appellant's guilty plea to persons not to possess a firearm and the sentence received therefor. *See Commonwealth v. Rachak*, 62 A.3d 389, 391 n.1 (Pa. Super. 2012) ("When a guilty plea is entered, all grounds of appeal are waived other than challenges to the voluntariness of the plea and the jurisdiction of the sentencing court."), *appeal denied*, 67 A.3d 796 (Pa. 2013).

On appeal, Appellant argues only that the trial court erred in denying his suppression motion in the Second Case, because "law enforcement officers failed to announce their identity, authority and purpose prior to forcibly entering and conducting a search of [his] residence in violation of the 'knock and announce' Rule, Pa.R.Crim.P. 207[.]"  Appellant's Brief at 7.[6] Appellant essentially argues that the trial court erred in declining to suppress the evidence of the sawed-off shotgun, notwithstanding its conclusion that the police officers violated the knock and announce rule.

In reviewing appeals from an order denying suppression, our standard of review is limited to determining

> whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct.  When reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.[7]  When the record supports the findings of the [trial] court, [we are] bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

---

[6] Appellant does not argue that the violation of the knock and announce rule implicates any rights guaranteed under the Fourth Amendment to the United States Constitution.  Even if he had, the Supreme Court has determined that the exclusionary rule is inapplicable to Fourth Amendment knock and announce violations.  **See Hudson v. Michigan**, 547 U.S. 586, 594-95 (2006).

[7] For cases in which the suppression hearing occurs after October 30, 2013, the scope of review of a suppression order encompasses only the record adduced at the suppression hearing.  **In the Interest of L.J.**, 79 A.3d 1073, 1088-89 (Pa. 2013).  We may examine the entire record here, because the suppression hearing occurred on November 1, 2012.

***Commonwealth v. Griffin***, 116 A.3d 1139, 1142 (Pa. Super. 2015).

Pennsylvania Rule of Criminal Procedure 207 codifies the "knock and announce" rule:

(A) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.[8]

(B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances require the officer's immediate forcible entry.

(C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Pa.R.Crim.P. 207.[9] "Although this rule is frequently referred to as 'knock and announce,' the rule actually imposes no specific obligation to knock." ***Commonwealth v. Walker***, 874 A.2d 667, 671 (Pa. Super. 2005) (quoting ***Commonwealth v. Doyen***, 848 A.2d 1007, 1012 (Pa. Super. 2004)). Nonetheless, the rule requires that police officers announce their identity, purpose and authority and then wait a reasonable amount of time for the

---

[8] Forcible entry is "any unannounced entry, regardless of the actual force used." ***Commonwealth v. Duncan***, 390 A.2d 820, 824 (Pa. Super. 1978) (citing ***Sabbath v. United States***, 391 U.S. 585 (1968)).

[9] Rule 207 came about in 2000 because of the renumbering of Rule 2007, its predecessor. Rule 207 was amended, effective April 1, 2001. The amendments to Rule 207 were minor and did not substantially change the import of the rule.

occupants to respond prior to entering any private premises.[10]

***Commonwealth v. Crompton***, 682 A.2d 286, 288 (Pa. 1996). This requirement, however, will be relaxed only in the presence of exigent circumstances. ***Carlton***, 701 A.2d at 148. Our Supreme Court has recognized only four exigent circumstances:

> 1. the occupants remain silent after repeated knocking and announcing;
>
> 2. the police are virtually certain that the occupants of the premises already know their purpose;
>
> 3. the police have reason to believe that an announcement prior to entry would imperil their safety; [or[11]]
>
> 4. the police have reason to believe that evidence is about to be destroyed.

---

[10] Discussing the genesis of the rule, our Supreme Court explained:

> The "knock and announce" rule's origins pre-date the United States Constitution. It was born in English Common Law and was subsequently adopted in America. In recent times, the "knock and announce" rule has assumed a Constitutional dimension. Both our Supreme Court and United States Supreme Court have held that the Fourth Amendment's prohibition against unreasonable searches and seizures applies to the manner of a warrant's execution. Even a valid warrant may not be executed in an unreasonable manner; unreasonableness is determined on a case-by-case basis.

***Commonwealth v. Carlton***, 701 A.2d 143, 147 (Pa. 1997) (citations and some quotations marks omitted).

[11] Even though the exigencies are enumerated with the conjunctive "and," courts have held that "any one of the instances justifies noncompliance with the knock and announce rule." ***Commonwealth v. Piner***, 767 A.2d 1057, 1059 n.1 (Pa. Super. 2000) (holding that the second exigency applied because "a uniformed officer stood under a porch light and engaged the attention of at least several occupants with an announcement of his identity, authority, and purpose").

*Commonwealth v. Chambers*, 598 A.2d 539, 541 (Pa. 1991); *accord Commonwealth v. Means*, 614 A.2d 220, 222 (Pa. 1992); *Crompton*, 682 A.2d at 288; *Carlton*, 701 A.2d at 147. The Commonwealth here does not argue that exigent circumstances exist to justify noncompliance with the knock and announce rule.

"The purpose of the 'knock and announce' rule is to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against the unauthorized entry of unknown persons, and to prevent property damage resulting from forced entry." *Chambers*, 598 A.2d at 541. The purpose of the rule may be achieved only through police officers' full compliance. *See id.* Indeed, our Supreme Court has held that "in the absence of exigent circumstances, forcible entry without announcement of [identity, authority and] purpose violates Article I, Section 8 of the Pennsylvania Constitution, which proscribes unreasonable searches and seizures." *Carlton*, 701 A.2d at 148 ("In a free society, the mere presence of police does not require an individual to throw open the doors to his house and cower submissively before the uniformed authority of the state."). Our Supreme Court has determined that "the remedy for noncompliance with the knock and announce rule *is always suppression*." *Crompton*, 682 A.2d at 290 (emphasis added).

During a suppression hearing, the Commonwealth bears the burden of proving that the police seized evidence without violating defendant's constitutional rights. *Id.* at 288. "The Commonwealth can satisfy its burden

- 11 -

by establishing either that the police complied with the knock and announce rule or that the circumstances **satisfied an exception**." **Id.** (emphasis added).

With the foregoing principles in mind, we now address Appellant's argument that the trial court erred in denying the remedy of suppression *sub judice* upon its determination that a knock and announce violation took place in the Second Case. As noted earlier, here the trial court correctly concluded that the police officers violated the knock and announce rule. The facts of this case indicate that the police failed to announce their identity, authority and purpose **until after** they opened the back door to Appellant's residence.

As we noted above, "the remedy for noncompliance with the knock and announce rule **is always suppression**." **Crompton**, 682 A.2d at 290 (emphasis added) (concluding that this Court "was in error when it found the police violated the knock and announce rule but did not suppress the seized evidence"). Here, the trial court denied the remedy of suppression based on its conclusion that no constitutional rights were implicated and that the police officers did not act in bad faith. We disagree. In **Crompton**, our Supreme Court explained that a knock and announce violation always infringes upon a defendant's fundamental rights guaranteed under Article I, Section 8 of the Pennsylvania Constitution. **Id.** Also, the trial court's determination that it can deny the remedy of suppression for a knock and announce rule violation based on its finding that the police officers did not act in bad faith is bereft of any legal support. The trial court does not cite

any cases in support of this bad faith proposition and our review of the law yields none. To the contrary, it is settled that under Article I, Section 8 of the Pennsylvania constitution, a good faith exception to the exclusionary rule does not exist. **See Commonwealth v. Edmunds**, 586 A.2d 887, 888 (Pa. 1991) (rejecting the good faith exception to the exclusionary rule set forth in **United States v. Leon**, 468 U.S. 897 (1984), and concluding that a good faith exception to the exclusionary rule would frustrate the guarantees embodied in Article I, Section 8, of the Pennsylvania Constitution); **see also Commonwealth v. Arnold**, 932 A.2d 143, 148 (Pa. Super. 2007) (citing **Edmunds** for the proposition that a good faith exception to the exclusionary rule does not exist under the Pennsylvania Constitution). Accordingly, consistent with **Chambers**, **Means**, **Crompton**, and **Carlton**, we are constrained to conclude that the trial court erred in denying Appellant's motion to suppress the sawed-off shotgun in connection with the Second Case after it determined that a knock and announce violation occurred.

To the extent the Commonwealth relies on **Commonwealth v. Davis**, 595 A.2d 1216 (Pa. Super. 1991), such reliance is misplaced because the legal effect of **Davis** has been limited by subsequent decisions of our Supreme Court. In **Davis**, in executing a search warrant, a police officer knocked on the front door of the appellant's premises several times. When the officer did not receive a response, and a few seconds had passed, a second officer peered through a window situated to the right of the door. That officer observed people in the living room, but they did not respond to

the knocks. Several seconds later, the first officer knocked again and managed to open the front door. As the door opened, the officer announced himself and then entered the premises. Arguing a knock and announce rule violation, the appellant moved to suppress the evidence seized from the residence. The trial court granted the appellant's suppression motion.

On appeal, a panel of this Court agreed with the Commonwealth and reversed the trial court's grant of the appellant's suppression motion. In so doing, the panel reasoned:

> Even though there was no technical compliance with Rule 2007's notice requirement, this does not *ipso facto* necessitate a finding that the evidence seized *must* be suppressed. . . . In the case at bar, because of our conclusion that the police had a valid search warrant, the police would have been entitled to enter the premises forcibly and conduct a search with or without the permission of the occupants. Moreover, the manner and method of entry by the police was made without injury to the persons or property, hence the purpose of Rule 2007 in preventing violence to persons and damage to property was fulfilled.
>
> Therefore, given the repeated knocking on the front door to the defendant's premises, the proximity to the occupants (in the living room adjacent) to the entry during the repeated notification efforts ("knocking") and the passage of *more* than 15 seconds, we find the police's identification of themselves and their purpose would have been futile gesture.

*Davis*, 595 A.2d at 1223 (citations omitted) (emphasis in original). Although *Davis* is factually similar to the case *sub judice*, its holding has been limited by subsequent decisions of our Supreme Court, such as *Chambers*, *Means*, *Crompton*, and *Carlton*. In these subsequent cases, the Court has determined categorically that a knock and announce violation requires the suppression of evidence. Thus, complete compliance with the knock and announce rule is required unless one of the four exigencies

- 14 -

applies. ***See Chambers***, ***supra***; ***Means***, ***supra***; ***Crompton***, ***supra***; and ***Carlton***, ***supra***. Given our Supreme Court's subsequent decisions, we decline to follow ***Davis***.

Similarly, we reject the Commonwealth's reliance on ***Commonwealth v. Kane***, 940 A.2d 483 (Pa. Super. 2007) and ***Commonwealth v. Sanchez***, 907 A.2d 477 (Pa. 2006), because those decisions involved the denial of suppression based on a Fourth Amendment violation. Instantly, Appellant does not raise a Fourth Amendment violation.

In sum, we conclude the trial court erred in denying Appellant's motion to suppress the evidence, *i.e.*, the sawed-off shotgun, with respect to the Second Case. Accordingly, we vacate the judgment of sentence pertaining to the Second Case only, and remand the matter to the trial court for further proceedings.

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/25/2015

- 15 -