J-A06037-22

2023 PA Super 136

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL GOODIS | : | |
| | : | |
| Appellant | : | No. 701 WDA 2021 |

Appeal from the Judgment of Sentence Entered January 8, 2021
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0001278-2017

BEFORE: MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

OPINION BY COLINS, J.: **FILED: July 28, 2023**

Appellant, Michael Goodis, appeals from the judgment of sentence imposed for his convictions of dissemination of child pornography, possession of child pornography, and criminal use of a communication facility.[1] Because the trial court erred in denying Appellant's motion to suppress evidence obtained from a search of his house that violated his rights under the Pennsylvania Constitution, we are constrained to vacate Appellant's convictions and judgment of sentence and remand this case for a new trial.

This case arises out of events in 2014. Between May 14, 2014 and June 1, 2014, Detective Robert Erdley, an Indiana County internet crimes against children investigator, ran searches for child pornography on the internet using

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6312(c) and (d) and 18 Pa.C.S. § 7512, respectively.

a law enforcement version of the BitTorrent file sharing program. N.T. Trial at 72-77, 80-82. In this investigation, Detective Erdley downloaded 22 files that contained child pornography from IP address 71.60.15.7. *Id.* at 82-92, 95-96, 104. The BitTorrent program that the IP address 71.60.15.7 was using to transmit these files was uTorrent 3.4.1, a program that runs on Windows and Mac computers. *Id.* at 108. In response to a court order, Comcast, the internet company that issued the IP address, identified IP address 71.60.15.7 as belonging to Appellant at his house in Export, Pennsylvania in Westmoreland County. *Id.* at 99-102.

Detective Erdley provided the information from his investigation to Lieutenant Robert Jones, a Greensburg, Westmoreland County police officer, who on September 18, 2014 applied for and obtained a search warrant for Appellant's house authorizing search for and seizure of computer hardware, computer processing units, including storage devices, and computer input and output devices. N.T. Trial at 102, 135, 186, 205-06; Defendant's Ex. D. Lieutenant Jones and two Murrysville police officers executed the search warrant the same day and seized a computer tower, a tablet computer, a Synology DiskStation network-attached storage device (NAS), and some other external hard drives and flash drives. N.T. Trial at 135, 137-40, 146, 152, 155, 205-06.

Lieutenant Jones did a full forensic examination of the computer tower and all of the external drives other than the NAS and found no child

pornography on any those items. N.T. Trial at 141-43, 146-48, 211, 215, 217-18. Lieutenant Jones examined the tablet using the access code provided by Appellant through his counsel and found no child pornography on it. *Id.* at 148-51, 211. Lieutenant Jones did not examine the NAS until February 15, 2017, and when he began to make a forensic image of one of the four drives of that device, the NAS had degraded to 33% and the drive made sounds indicating imminent failure. *Id.* at 155-58, 162-63, 225-26, 243. Because Lieutenant Jones believed that the NAS was likely to fail before forensic imaging could be completed, he put the drive back in the NAS and instead attached the NAS to his router, which had no internet access, and accessed the NAS through its web interface. *Id.* at 158-65. The NAS did not require inputting of a password to access its contents. *Id.* at 162, 229.

Lieutenant Jones found more than 30 child pornography files on the NAS in a folder labeled "mtemp" with the file path "MEGABIZ-V3/Data/C/Users/Michael/Desktop/mtemp" that appeared to be backup from a Windows computer with the network name MEGABIZ-V3. N.T. Trial at 165-82, 184-88. Many of these files bore names that indicated that they related to sex acts with minors. *Id.* at 177-81, 185-86; Commonwealth Exs. 7-8, 10, 14, 16. Lieutenant Jones made a copy onto another device of the NAS's entire backup of the MEGABIZ-V3 computer. N.T. Trial at 165-66, 191, 230-31.

No computer with the name MEGABIZ-V3 was found in the search of Appellant's house. N.T. Trial at 167, 202. The child pornography files found

by Lieutenant Jones on the NAS were different from the child pornography files downloaded by Detective Erdley and none of the files downloaded by Detective Erdley was found on the NAS or any other computer devices seized from Appellant's house. *Id.* at 178-80, 184-88, 239.

On February 21, 2017, Appellant was charged with dissemination of child pornography, possession of child pornography, and criminal use of a communication facility. Appellant filed a motion to suppress the evidence seized from his house on the ground that the search was conducted in violation of the requirement that police announce their identity, purpose, and authority before entering. The trial court held two evidentiary hearings on the motion to suppress at which Appellant, Lieutenant Jones, and the two Murrysville police officers who executed the search warrant with Lieutenant Jones all testified. In addition, security camera video and audio recordings of the officers' entry into Appellant's house to execute the search warrant were admitted in evidence. On September 17, 2018, the trial court entered an order denying Appellant's motion to suppress. Appellant filed a motion for reconsideration of the denial of his suppression motion, which the trial court denied.

The NAS, which Lieutenant Jones had left running after he made his copy of the MEGABIZ-V3 backup, crashed and ceased being able to function in 2020. N.T. Trial at 241-42. Before the NAS failed, expert witnesses for

Appellant had an opportunity to examine the NAS in November 2018 and September 2019. *Id.* at 243-44.

A jury trial was held from October 7, 2020 to October 9, 2020. The Commonwealth called Detective Erdley and Lieutenant Jones, who testified concerning their investigations and what they found as set forth above. Both of these witnesses testified as expert witnesses, Detective Erdley as an expert in the field of internet crimes against children, file sharing, and internet protocol and Lieutenant Jones as an expert in the field of forensic computer examination. N.T. Trial at 58, 128. It was stipulated by Appellant that the files downloaded from Appellant's IP address and more than 30 files found in the MEGABIZ-V3 mtemp folder on Appellant's NAS contained photographs, videotapes or computer depictions of children under the age of 18 engaging in prohibited sex acts. *Id.* at 104, 187-88. Appellant testified on his own behalf and called two expert witnesses, a computer forensics expert who had examined the NAS and an expert in computer security and computer networks.

Appellant testified that he was unaware of the child pornography files that were sent by his IP address and found on the NAS and that he never put any child pornography and his computers and devices or shared or possessed child pornography. N.T. Trial at 319-21. Appellant testified that he purchased the NAS in March or May of 2013 and that he set up the NAS for remote access. *Id.* at 309, 370. Appellant testified that MEGABIZ-V3 was a computer

that he had owned and gave away to a friend in 2013 and that the MEGABIZ-V3 folders on the NAS came from previous backup devices that were subsequently backed up on the NAS, but testified that he put some files in MEGABIZ-V3 folders after he had the NAS and no longer had MEGABIZ-V3. *Id.* at 313-17, 331-32. Appellant testified that he was in the business of producing audio for television commercials, games, and other video productions and that he used his computers for that work. *Id.* at 299-303. Appellant testified that his wireless router was not password protected in 2014 because clients and people he was working with used the computers and he did not want to have to constantly give out the password. *Id.* at 304, 336-37. Appellant testified that one of his neighbors was within wireless range of his house. *Id.* at 304-06, 336. Appellant also identified a screenshot of his wireless router's port configuration that he testified that he took in 2014 before his NAS and other computer equipment were seized, and that screenshot was admitted in evidence. *Id.* at 371-75; Defendant's Ex. E.

Appellant's computer forensics expert testified that third parties within range of the owner's wireless router can access a computer from outside the owner's network if the network is not password protected. N.T. Trial at 280-81, 291-93, 296-97. The computer forensics expert also testified that he obtained system logs from the NAS when he examined it in 2019 and those logs were admitted in evidence. *Id.* at 268-70; Defendant's Ex. C. Appellant's computer security and computer networks expert testified that the port

configuration in the screenshot identified by Appellant made Appellant's NAS vulnerable to internet access by outsiders. N.T. Trial at 397-401. He also testified that the NAS system logs showed that the NAS was not turned on between September 18, 2014 and March 20, 2017 and was not turned on in February 2017, when Lieutenant Jones testified that he examined it and found the child pornography. *Id.* at 410-18, 431.

On October 9, 2020, the jury convicted Appellant of one count of dissemination of child pornography, 30 counts of possession of child pornography, and one count of criminal use of a communication facility. N.T. Trial at 547-49. The trial court, on January 8, 2021, sentenced Appellant to a term of imprisonment of one year less one day to two years less one day for the dissemination of child pornography conviction and seven years' probation for the criminal use of a communication facility conviction and each of the possession of child pornography convictions. Sentencing Order. The trial court ordered that all of the probation sentences were to be served consecutive to the imprisonment sentence and concurrent to the other probation sentences and also imposed 25-year registration under the Sex Offender Registration and Notification Act[2] on Appellant. *Id.*

Appellant filed a timely post sentence motion challenging the sufficiency and weight of the evidence and also seeking a new trial on the grounds that

---

[2] 42 Pa.C.S. §§ 9799.10-9799.42.

the Commonwealth spoliated evidence by allowing the NAS to degrade and fail without obtaining a forensic image, that the trial court erred in admitting in evidence an internet forum post concerning the firmware in the router port configuration to which Appellant testified, and that trial counsel was ineffective in failing to object to statements by the Commonwealth in its opening and closing. The trial court held a hearing on Appellant's post sentence motion on March 12, 2021 at which it heard testimony from Lieutenant Jones on the spoliation issue and heard argument on the other issues in the post sentence motion. On May 18, 2021, the trial court entered an order denying Appellant's post sentence motion. This timely appeal followed.

In this appeal, Appellant presents the following six issues for our review:

1. At trial, did the court err when it admitted wholesale an anonymous internet forum post, which the prosecutor then relied on repeatedly to challenge the credibility of the defendant and a defense expert?

2. At trial, did the court err when it allowed the prosecutor to challenge a defense expert to forensically examine a computer device in court, when the Commonwealth had destroyed that device and conceded that it could not be examined?

3. At trial, did the prosecutor's inflammatory rhetoric and personal opinions prejudice the jury, and was defense counsel ineffective in failing to object?

4. Did the trial court err in denying defendant's pretrial motion to suppress where video evidence plainly showed that officers executing a search warrant failed to announce their presence and purpose before entering, and no exigency applied?

5. Did the trial court err in finding that the evidence was sufficient to sustain the verdict, where no evidence of defendant's knowledge was presented?

6. Did the trial court abuse its discretion in finding that the verdict was not against the weight of the evidence?

Appellant's Brief at 4-5 (trial court's answers omitted). We first address Appellant's fifth issue, the sufficiency of the evidence claim, and then address Appellant's fourth issue, the denial of Appellant's motion to suppress. Because we conclude that the trial court erred in denying the motion to suppress and that a new trial on all charges is required as a result of that error, we need not and do not address Appellant's first, second, third, and sixth issues, all of which seek a new trial on other grounds.

Our standard of review in a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Sauers*, 159 A.3d 1, 11 (Pa. Super. 2017) (quoting *Commonwealth v. Colon−Plaza*, 136 A.3d 521 (Pa. Super. 2016)). In applying this standard, we consider all of the evidence that was admitted at trial. *Sauers*, 159 A.3d at 11; *Colon−Plaza*, 136 A.3d at 526.

The elements of the offense of dissemination of child pornography are that the defendant knowingly sold, distributed, delivered, disseminated, transferred, displayed or exhibited to others a depiction of a child under the age of 18 engaged in a prohibited sex act or simulation of such an act or knowingly possessed such a depiction for the purpose of sale, distribution, delivery, dissemination, transfer, display or exhibition.  18 Pa.C.S. § 6312(c). The elements of possession of child pornography are that the defendant either knowingly possessed or controlled a depiction of a child under the age of 18 engaged in a prohibited sex act or simulation of such an act or intentionally viewed such a depiction.  18 Pa.C.S. § 6312(d); **Colon-Plaza**, 136 A.3d at 526 & n.7.  The offense of criminal use of a communication facility requires proof that the defendant knowingly, intentionally, or recklessly committed or facilitated a felony by use of a communication facility.  18 Pa.C.S. § 7512(a); **Commonwealth v. Moss**, 852 A.2d 374, 382 (Pa. Super. 2004).  A home computer with internet connection is a "communication facility."  18 Pa.C.S. § 7512(c); **Commonwealth v. Crabill**, 926 A.2d 488, 493 (Pa. Super. 2007).

Appellant claims that the Commonwealth failed to prove the element of knowledge, that Appellant knew that he had child pornography on one of his computers and knew that he was transmitting child pornography from his computer network.  We do not agree.

The evidence at trial showed that child pornography was transmitted through an IP address that belonged to Appellant, that over 30 child

- 10 -

pornography files, many of which had names referencing children and sex acts, were on a computer storage device owned by Appellant in a folder labeled with Appellant's name and a network name assigned by Appellant to a computer that had belonged to him.  N.T. Trial at 86-92, 95-96, 99-102, 104, 165-82, 184-88, 313-15; Commonwealth Exs. 7-8, 10, 14, 16.  The evidence also showed that Appellant was the sole resident of the house to which the IP address was assigned and where computer storage device in question was found, and that the MEGABIZ-V3 computer backup in which child pornography was found contained documents that were Appellant's.   N.T. Trial at 100-02, 135-39, 197-99, 316.

This is sufficient to prove that Appellant knew that he was possessing and transmitting child pornography.  **Sauers**, 159 A.3d at 4, 11-12 (evidence that police downloaded child pornography from a computer with defendant's IP address and username and that examination of defendant's computer showed use of program to download and share child pornography was sufficient to show knowing possession and dissemination); **Colon-Plaza**, 136 A.3d at 524, 526-29 (evidence that police downloaded child pornography from defendant's computer through file sharing program and that child pornography was found on defendant's computer under his username was sufficient to show knowing possession and criminal use of communications facility even though another person also lived in defendant's apartment); **Commonwealth v. Koehler**, 914 A.2d 427, 431-32, 437 (Pa. Super. 2006)

(evidence that police found child pornography on computer in defendant's bedroom that had a screen name, systems properties name, and software registration name that referred to defendant's name was sufficient to show knowing possession despite absence of direct evidence that defendant accessed the files at issue and defendant's claim that others in house could have accessed the computer). Although Appellant denied knowledge of the child pornography and introduced evidence that a third party could have accessed his computer network, the jury was not required to believe Appellant and his witnesses or believe that the child pornography was put on Appellant's computer network or disseminated by such an unknown third party.

In his fourth issue, Appellant argues that the police officers executing the search warrant violated his rights under the Pennsylvania Rules of Criminal Procedure and the Pennsylvania Constitution by entering his home without announcing their purpose and that the trial court therefore erred in denying his motion to suppress the NAS that they seized and evidence derived from it. Our standard and scope of review of the denial of a motion to suppress evidence is well established:

> Appellate review of a suppression decision is limited to the suppression record, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by the defense. This Court is bound by the facts as found by the suppression court so long as they are supported by the record, but our review of its legal conclusions is de novo.

*Commonwealth v. Valdivia*, 195 A.3d 855, 861 (Pa. 2018) (citations omitted).

Pennsylvania Rule of Criminal Procedure 207 and Article I, Section 8 of the Pennsylvania Constitution require that police, before entering a dwelling to execute a search warrant, announce their identity, purpose and authority and give the occupant a reasonable period of time after such announcement to let them in, unless exigent circumstances require immediate forcible entry. Pa.R.Crim.P. 207; *Commonwealth v. Crompton*, 682 A.2d 286, 288, 290 (Pa. 1996); *Commonwealth v. Frederick*, 124 A.3d 748, 754-56 (Pa. Super. 2015). The purposes of this requirement, known as the "knock and announce rule," are to prevent resistance by an occupant protecting his dwelling, to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against the unauthorized entry, and to prevent property damage resulting from forced entry. *Commonwealth v. Carlton*, 701 A.2d 143, 146 (Pa. 1997); *Crompton*, 682 A.2d at 288; *Commonwealth v. Frederick*, 124 A.3d at 755.

The knock and announce rule is not limited to entry that involves breaking down a door or damage to the dwelling; it applies to any entry into a dwelling without the occupant's permission, including entry through an unlocked door. *Crompton*, 682 A.2d at 287, 290 (suppressing evidence where police entered house through unlocked screen door without complying with knock and announce rule); *Frederick*, 124 A.3d at 752-53, 754 n.8, 756-

57 (suppressing evidence where police opened door simply by pushing on it without damaging it and did not announce who they were or their purpose until after door was open); **Commonwealth v. Douventzidis**, 679 A.2d 795, 796, 798-800 (Pa. Super. 1996) (suppressing evidence where front door was partially open and police entered by opening a screen door without complying with knock and announce rule).

Moreover, even where police knock and clearly announce their identity as police, failure to announce their purpose before entering the premises violates Rule 207 and Article I, Section 8 of the Pennsylvania Constitution and suppression is required unless exigent circumstances for the failure to announce are shown. **Carlton**, 701 A.2d at 147-49; **Commonwealth v. Wagstaff**, 911 A.2d 533, 537-38 (Pa. Super. 2006); **Douventzidis**, 679 A.2d at 798-800.

> [T]here is no requirement that anyone open the door to their dwelling in the absence of police statement of their authority and purpose. In a free society, the mere presence of police does not require an individual to throw open the doors to his house and cower submissively before the uniformed authority of the state. … [I]n the absence of exigent circumstances, forcible entry without announcement of purpose violates Article 1, Section 8 of the Constitution of Pennsylvania, which prohibits unreasonable searches and seizures.

**Carlton**, 701 A.2d at 147-48.

The burden is on the Commonwealth to prove that the police fully complied with the knock and announce rule or to prove one of the following four exigent circumstances: 1) that the occupants fail to respond after

- 14 -

repeated knocking and announcing; 2) that the police are virtually certain that the occupants already know their purpose; 3) that the police have reason to believe that an announcement prior to entry would imperil their safety; or 4) that the police have reason to believe that evidence is about to be destroyed. *Carlton*, 701 A.2d at 147; *Crompton*, 682 A.2d at 288; *Frederick*, 124 A.3d at 755, 757. If the Commonwealth does not satisfy that burden, the evidence seized in the noncompliant search must be suppressed, even though a valid warrant for the search existed. *Carlton*, 701 A.2d at 147-49; *Crompton*, 682 A.2d at 290; *Frederick*, 124 A.3d at 755-57. "Even a valid warrant may not be executed in an unreasonable manner." *Carlton*, 701 A.2d at 147 (quoting *Commonwealth v. McDonnell*, 516 A.2d 329 (Pa. 1986)).

Here, the trial court found that the police who came to execute the search warrant knocked on Appellant's door and that an officer opened Appellant's unlocked, closed door and entered Appellant's house with his gun drawn after he knew that Appellant was responding to their knock. Trial Court Opinion, 9/17/18, at 5. These findings are supported by the record. N.T. Suppression Hearing, 7/20/18, at 11-12, 14, 16-17; Defendant's Suppression Hearing Ex. A, Video 4. The trial court found that the police announced their presence, but did not find that they announced their purpose or that they waited a significant length of time for Appellant to let them in before entering. Trial Court Opinion, 9/17/18, at 5; Trial Court Opinion, 1/8/19, at 3. Moreover, any finding that the police announced their purpose or waited a

reasonable period of time before entering would be unsupported by and directly contrary to the record. The uncontradicted evidence from the suppression hearings shows that the police did not announce their purpose at any time before entering Appellant's house and that an officer opened Appellant's door and came inside the house with his gun drawn within a few seconds after he knew that Appellant was responding. N.T. Suppression Hearing, 7/20/18, at 11-14, 16-18, 23-24; Defendant's Suppression Hearing Ex. A, Video 4. The record is therefore clear that the police did not comply with the requirement that they knock and announce before entry. *Carlton*, 701 A.2d at 147-48 (failure announce purpose is violation); *Commonwealth v. Means*, 614 A.2d 220, 223 (1992) (absent proof of exigent circumstances, 5 to 10 second wait after announcing purpose is not a reasonable length of time to allow occupant to respond).

The trial court ruled that the entry did not violate Appellant's rights on the ground that immediate entry was necessary for officer safety. Trial Court Opinion, 9/17/18, at 5-6; Trial Court Opinion, 1/8/19, at 3.[3] The record, however, cannot support this legal conclusion.

_____

[3] The trial court did not find that any of the other three exigent circumstances that excuse compliance with the knock and announce rule applied here. Moreover, there is no support in the record for any of those exceptions. The police admitted that there was no failure to respond by Appellant after they knocked on his door. N.T. Suppression Hearing, 7/20/18, at 11-12, 14, 16. There was no testimony by any of the officers that they believed that immediate entry without announcement was necessary to prevent destruction
*(Footnote Continued Next Page)*

At the first suppression hearing, Appellant and Lieutenant Jones testified. Appellant testified that when the police arrived to execute the warrant, he noticed that there were people standing outside his door, but did not hear any announcement of who they were and did not know who they were. N.T. Suppression Hearing, 1/29/18, at 20, 22-23, 25-26. Appellant testified that he put a finger up to signal for them to wait because he wanted to put on clothes before opening the door and that he went out of view of the door to put on clothes, but that before he could finish dressing, police officers had come in and were holding him at gunpoint. *Id.* at 22-24, 26-28. Lieutenant Jones testified that he thought that one of the Murrysville officers knocked on the door and did not remember whether anything was said before entering the house. *Id.* at 33-34. He testified that he thought that Appellant came to the door before the officers went in, but admitted that he did not have a specific recollection of what happened. *Id.* at 35-39.

At the second suppression hearing, the recordings from Appellant's security system were introduced in evidence and the two Murrysville police officers, Officer Lepovsky and Officer Sadlowe, testified. Officer Lepovsky

_____

of evidence. While, as discussed below, Appellant knew that the people at the door were police officers after they opened the door but before they entered, there was no basis for any claim or finding that the officers were virtually certain that Appellant knew why they were there. The transmission of child pornography on which the search warrant was based occurred over three months before the search occurred.

testified that he knocked "about two times" on the door and then almost immediately saw Appellant inside about 10 or 12 feet away facing the door. N.T. Suppression Hearing, 7/20/18, at 11, 16. Officer Lepovsky testified that he saw Appellant hold up a finger "as if to motion, like, wait" and then turn and walk out of view of the door. *Id.* at 11-12. Officer Lepovsky testified that this caused him to enter the house because he was concerned when Appellant went out of view that Appellant could be going for a weapon and that he entered the house with his gun drawn and directed Appellant to come back to the doorway. *Id.* at 12-14, 17. Officer Lepovsky testified that he did not know whether he ever verbally identified himself and the other officers as police or announced that they were there to serve a search warrant before he entered the house. *Id.* at 17-18. Officer Sadlowe testified that Officer Lepovsky knocked on the door and that after knocking, Officer Lepovsky indicated that there was someone in the house. *Id.* at 20. Officer Sadlowe testified that Officer Lepovsky entered the house only seconds after he said there was someone inside and that he followed Officer Lepovsky into the house, but did not draw his gun. *Id.* at 20-21, 23-24. Officer Sadlowe testified that he could not recall whether Officer Lepovsky made any announcement of identity or purpose before entering. *Id.* at 24.

One of the six security camera recordings that were introduced in evidence, Video 4, was from a camera inside the house that shows the door through which the police entered with the kitchen area of house in the

foreground and contains both video and audio of the police entry and the events leading up to it. This recording shows that the top part of the door has a window, but nothing is visible through it on the video because of sun glare, so it is not possible to tell where the officers were positioned or whether Appellant could see that police were at the door. The video shows Appellant walking in the kitchen area on the left side of the screen toward a short entranceway that leads to the door, putting up his first finger to indicate to whoever is at the door to wait, and then turning around and walking back out of view of the door to where he had been. Defendant's Suppression Hearing Ex. A, Video 4. One second later, one of the officers opens the door. *Id.* The officer is in uniform and clearly visible to someone looking from inside the house toward the door and stands in the doorway. *Id.* Appellant walks back to where he can be seen from and see the doorway and again holds up his first finger. *Id.* Appellant then walks back out of view of the door again, and the officer within two seconds enters the house with his gun drawn. *Id.* The officer then confronts Appellant in the kitchen, directs Appellant to come to the door of the house, and brings him to the doorway. *Id.* Appellant was apparently putting pants on when he was out of view of the officers as this video shows him pulling something up on himself and that he has sweatpants on when he goes with the officer to the door and another of the recordings shows that he was wearing boxer shorts when he first went to answer the door. Defendant's Suppression Hearing Ex. A, Video 4, Video 3.

The audio of Video 4 shows that the police did not verbally identify themselves as police and did not state that they were there to enforce a warrant before opening the door and entering Appellant's house. There is no verbal communication by Appellant or the police on the audio until after Appellant first signals to the door with his finger and walks away. When the police officer opens the door, he does not identify himself as police or state any reason why he is there, but says only "Hey, buddy, you all right?," to which Appellant responds "Yeah, I'm good" and begins to return to where he can see and be seen from the doorway. Defendant's Suppression Hearing Ex. A, Video 4. The officer says "Hey, come here, come out here and talk to me," and Appellant, who is now in sight of the doorway and can see that the person in the doorway is a uniformed police officer, responds "Hold on a second" while putting up his finger the second time. *Id.* The officer says "OK, all right," and then immediately enters the house with his gun drawn after Appellant walks away. *Id.* The first time any of the officers mentions a warrant is after the officer entered with his gun drawn, when the officer has brought Appellant back to the doorway. *Id.*

The sole basis for the trial court's conclusion that there was a danger to officer safety was Officer Lepovsky's testimony that he immediately entered because he was concerned that Appellant could be going for a weapon and that when "the person disappears that's an immediate safety concern." N.T. Suppression Hearing, 7/20/18, at 12, 17. However, exigent circumstances

concerning officer safety exist only where there is a reasonable basis for the police to believe that announcing their identity and purpose would endanger their safety and subjective good faith of the officers is not sufficient to excuse noncompliance with the knock and announce rule. *Frederick*, 124 A.3d at 155-56.

It is clear, in light of the video and audio evidence, that there was not a reasonable basis for not announcing the officers' purpose before Officer Lepovsky entered Appellant's house with his gun drawn. The video shows no furtive or evasive movements by Appellant; it shows him walking in view of the doorway and out of view at a normal walking speed with no unusual motions or gestures indicating any hostility or resistance. No evidence was introduced that the police had any information about Appellant that suggested that he was armed or violent. The crime that the police were investigating, while serious, involved use of computers, not weapons of any sort.

There was also no reason that the officer could not have announced his purpose, rather than saying "Hey, buddy, you all right?," when Appellant walked away the first time. No officer testified that announcing that they were there to execute a search warrant created any danger to their safety. Moreover, to the extent that the mere fact of moving out of view created a safety concern, there is no evidence that there was any reason why the officer could not have told Appellant that he had a search warrant and directed him to come out without further delay before the officer entered the house, rather

than asking Appellant to come to the door without stating any reason for his authority and saying "OK, all right" in response to Appellant's request that he wait briefly. There was also no reason for the officers to believe that making such an announcement and stating that Appellant had to come to the door immediately would have been futile. Appellant had already once come back into view in response to the officer's request and he walked away again only after asking the officer to briefly wait and being told "OK, all right" by the officer.

The trial court's only other justification for not suppressing the evidence was that the police did not damage property in making their entrance. Trial Court Opinion, 1/8/19, at 3. That rationale, however, is not legally valid. As discussed above, the fact that police enter a house through an unlocked door and no physical harm occurs does not negate a knock and announce violation and is not a ground for denying suppression. *Crompton*, 682 A.2d at 287, 290; *Frederick*, 124 A.3d at 752-53, 754 n.8, 756-57; *Douventzidis*, 679 A.2d at 796, 798-800.

*Commonwealth v. Kane*, 940 A.2d 483 (Pa. Super. 2007), relied on by the trial court and the Commonwealth, does not support the denial of Appellant's suppression motion. In *Kane*, there was no issue of whether a claim of danger to the police was reasonable. *Id.* at 490. Rather, this Court held that there was no violation of the knock and announce rule because the police had repeatedly announced their identity and purpose both before

entering the adjoining building and inside the adjoining building and that, as a result, any person inside the building in question was necessarily aware that police were seeking entry to execute a search warrant before the police opened the door between the buildings. *Id.* at 491-92. *Kane* therefore has no applicability here, where the police never announced their purpose before an officer entered Appellant's house with his gun drawn.

Because the record establishes that the police did not announce their purpose before they entered Appellant's house and the Commonwealth did not prove that the police had any reason to believe that announcement of their purpose prior to entry would imperil their safety, the search of Appellant's house violated Appellant's rights under Article I, Section 8 of the Pennsylvania Constitution. The trial court's denial of Appellant's motion to suppress the NAS and other items seized from his house in that search and evidence derived from the NAS was therefore error. "[T]he remedy for noncompliance with the knock and announce rule is always suppression." *Crompton*, 682 A.2d at 290; *Frederick*, 124 A.3d at 755 (quoting *Crompton*) (emphasis omitted).

At Appellant's trial, the NAS, screenshots and documents downloaded from it, and testimony concerning what was found on it were introduced in evidence. *See*, *e.g.*, N.T. Trial at 165-82, 184-88; Commonwealth Exs. 4-24. This improperly admitted evidence played a central role in Appellant's trial. Not only was this evidence used by the Commonwealth to prove the

possession of child pornography charges against Appellant, it was also used by the Commonwealth to support its contention that the dissemination of child pornography by Appellant's wireless router was knowing and not the result of a third party's access to his wireless network. N.T. Trial at 506-09, 511-18, 522. Appellant is therefore entitled to a new trial on all of the charges against him. Accordingly, we reverse the order denying suppression, vacate all of Appellant's convictions and sentence, and remand for a new trial at which no evidence derived from the search and seizure shall be admitted.

Judgment of sentence vacated. Case remanded with instructions to grant Appellant's motion to suppress and for new trial. Jurisdiction relinquished.

Judge Murray joins the opinion.

Judge Sullivan files a Concurring Opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/28/2023