J-S01019-21

2021 PA Super 74

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT TIRRELLE DEVANTE CAREY | : | |
| | : | |
| Appellant | : | No. 206 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 13, 2020
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0000691-2019

BEFORE: LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

OPINION BY McCAFFERY, J.: **FILED APRIL 19, 2021**

Robert Tirrelle Devante Carey (Appellant) appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas following his jury conviction of two counts of possession with intent to deliver controlled substances (PWID)[1] (cocaine and oxycodone) and related offenses. Appellant argues the trial court erred when it denied his motion to suppress based on an invalid warrant and the unlawful execution of that warrant. He also insists the court's imposition of a 12-month period of re-entry supervision pursuant to 61 Pa.C.S. § 6137.2 is an unconstitutional *ex post facto* punishment. Because we agree the application of Section 6137.2 is unconstitutional as applied to Appellant, where he committed the underlying offenses before the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

effective date of the statute, we vacate that part of his sentence. In all other respects, we affirm.

We glean the following facts from the affidavits of probable cause supporting two search warrants executed in this case, as well as the testimony presented at the suppression hearing.[2] On October 26, 2018, a Carlisle Police officer attempted to initiate a traffic stop of a black Chevrolet Impala operated by Appellant. Search Warrant & Authorization, 2/13/19, Affidavit of Probable Cause at ¶ 2 (Body Warrant). Appellant did not stop, but rather fled the scene in his car at a high rate of speed. *Id.* He then pulled into a parking lot and fled from the vehicle on foot. *Id.* During his escape, Appellant "kicked in a rear door at 136 W Louther St gaining entry into a residence which he did not have permission to be in." *Id.* He successfully evaded capture, and a warrant was issued for his arrest. *Id.* Appellant was also wanted for a parole violation "with the original charges being related to [felony] firearms possession[.]" *Id.* Appellant's "lengthy criminal history" includes charges of robbery, carrying a firearm without a license, and delivery of narcotics. *Id.*

On February 12, 2019, the Carlisle Police Department received a tip through "Crimewatch" that Appellant was "staying at 1820 Heishman Gardens

---

[2] As the trial court notes in its opinion, because "the facts from trial are not at issue[,]" the trial transcript was not requested by Appellant. Trial Ct. Op., 7/21/20, at 3.

in North Middleton Township" with Lanajah Hodge,[3] and that he was driving a "white Nissan SUV." Body Warrant at ¶ 3. That same day, the Carlisle Police Department conducted surveillance of the Heishman Gardens residence at approximately 7:30 p.m. *Id.* Officers "observed a dark colored Honda Civic registered to Lanaja[h] Hodge parked in the driveway of 1820 Heishman Gardens." *Id.* Ms. Hodge's driver's license lists the Heishman Gardens residence as her address. *Id.* Carlisle Police Sergeant Joshua Bucher[4] returned the next day at about 2:30 p.m., at which time he "observed a white . . . Nissan Rogue sitting in the driveway at 1820 Heishman Gardens." *Id.* Sergeant Bucher then applied for a warrant to search 1820 Heishman Gardens for Appellant. The warrant was approved at 3:00 p.m. on February 13th.

At approximately 6:20 a.m. the next morning, February 14, 2019, the Cumberland County Special Response Team executed the warrant at 1820 Heishman Gardens. Search Warrant & Authorization, 2/14/19, Affidavit of Probable Cause at ¶ 4 (Search Warrant); N.T., Suppression H'rg, at 13. Hampden Township Police Officer Jason Wayne Julseth was the team leader for the Special Response Team. *See* N.T., Suppression H'rg, at 12, 14. Officer Julseth testified that the team was "briefed that it was going to be a high risk search warrant involving possible drugs and a gun." *Id.* at 13. He explained

---

[3] Although the Affidavit of Probable Cause spells Hodge's first name "Lanaja," Ms. Hodge testified at the suppression hearing that her first name is spelled "Lanajah." *See* N.T. Suppression H'rg, 8/30/19, at 25.

[4] Sergeant Bucher is also a detective with the Cumberland County Drug Task Force. N.T., Suppression H'rg, at 5.

that he had members of the team stationed at the front and back of the residence, as well a "full coverage around the sides." *Id.* at 15. Officer Julseth testified the team could not see inside the residence because the windows "were draped." *Id.* Therefore, they did a "knock-and-announce" where they banged on the door, "waited about 10 seconds, and then . . . manually breached the door open[.]" *Id.* Officer Julseth stated the team did not "make entry" at that time, but rather "h[e]ld the threshold." *Id.* He explained that about ten seconds later, Appellant "appeared out of the back" and the officers "called him out." *Id.* at 16. Officer Julseth stated Appellant was not handcuffed until he was "outside the threshold of his residence." *Id.* at 17. The team then "called out" Hodge as well before entering the residence to check for "other persons." *Id.* at 20.

Sergeant Bucher testified that, once inside the residence, he "smelled a strong odor of burnt marijuana" and noticed several "partially smoked marijuana 'blunts'" in an ash tray in plain view. Search Warrant at ¶ 4. Based on his observations, he obtained a second warrant for 1820 Heishman Gardens to search for additional marijuana. *Id.* at ¶¶ 6-7. The second warrant was executed at approximately 8:40 a.m. *Id.* at ¶ 7. During the execution of that warrant, officers observed "individually packaged baggies of suspected crack cocaine, oxycodone and [P]ercocet pills," as well as additional drug packaging materials, and a loaded firearm. *Id.* Sergeant Bucher applied for, and was granted, a third search warrant to seize the additional drugs and firearm. *Id.* at ¶ 9.

- 4 -

Ms. Hodge's suppression hearing testimony concerning the officers' execution of the body warrant differed from that of Officer Julseth. She claimed that she and Appellant were sleeping when she heard "someone outside say whoever is in the residence of 1820 Heishman Gardens . . . come outside." N.T., Suppression H'rg, at 26. She did not hear anyone knock on the door. *Id.* at 27. Ms. Hodge testified that "two seconds later," she and Appellant came out of the bedroom and "there were already people inside" the house. *Id.* at 26-27. She stated that the officers "had guns everywhere" and immediately arrested Appellant and put her in handcuffs. *Id.* at 27.

Appellant was subsequently arrested and charged with two counts each of PWID (cocaine and oxycodone) and possession of controlled substances (cocaine and oxycodone), and one count each of persons not to possess firearms, receiving stolen property, possession of a small amount of marijuana, and possession of drug paraphernalia.[5] Appellant filed a pre-trial omnibus motion seeking suppression of the drugs and weapon recovered during the search, as well as dismissal of the firearms charge. The Honorable Albert H. Masland conducted a suppression hearing on August 30, 2019. After permitting the parties to file briefs, Judge Masland denied the pre-trial motion on November 5, 2019.

The case proceeded to a jury trial before the Honorable Thomas A. Placey. On December 11, 2019, the jury returned a verdict of guilty on all the

---

[5] **See** 18 Pa.C.S. 3925(a), 6105; 35 P.S. § 780-113(a)(16), (31), (32).

drug charges, and not guilty on the firearms and receiving stolen property offenses. On January 13, 2020, the trial court sentenced Appellant to an aggregate term of 45 to 90 months' imprisonment. Because Appellant had a state parole violation, with a maximum date of January 17, 2021, the court noted that Appellant's "aggregate sentence" was more than four years. *See* N.T., 1/13/20, at 7-8. Thus, the trial court determined it was required to impose an additional 12-month period of reentry supervision pursuant to 61 Pa.C.S. § 6137.2. *Id.* at 8-9, 12. This timely appeal follows.[6]

Appellant asserts three issues on appeal:

I.    Did the court err when it denied Appellant's motion to suppress when it found that there was a valid search warrant to search a home where [Appellant] was found as a guest?

II.    Did the court err in denying Appellant's motion to suppress when it found that the execution of the warrant was procedurally lawful?

III.    Is 61 Pa.C.S. § 6137.2 an unlawful statute that imposed an illegal twelve month period of re-entry supervision upon Appellant?

Appellant's Brief at 6 (some capitalization omitted).

Appellant's first two issues challenge the trial court's denial of his suppression motion. Our standard of review is well-established:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record

---

[6] Appellant complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted).

Appellant first contends the body warrant was issued without adequate probable cause. He insists the affiant failed to sufficiently corroborate the anonymous tip received through Crimewatch. *See* Appellant's Brief at 12-13. Appellant maintains:

Nothing in the warrant application linked [Appellant] to Ms. Hodge. The warrant application did not note whether the plates on the Nissan Rogue were linked to [Appellant]. No officer ever saw [Appellant] enter or leave the residence. The residence was not a known address of [Appellant].

*Id.* at 13. Thus, he argues the information contained in the probable cause affidavit of the body warrant did "not give rise to the level of probable cause that is required in order to execute the search warrant." *Id.*

When considering the adequacy of a search warrant, we must bear in mind the following:

> Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a "totality of the circumstances" test as set forth in ***Illinois v. Gates***, 462 U.S. 213[ ] (1983), and adopted in ***Commonwealth v. Gray***, [ ] 503 A.2d 921 ([Pa.] 1985). A magistrate is to make a "practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." The information offered to establish probable cause must be viewed in a common sense, nontechnical manner.

***Commonwealth v. Manuel***, 194 A.3d 1076, 1081 (Pa. Super. 2018) (some citations and footnote omitted). When determining whether a warrant is supported by probable cause, the magistrate "may not consider any evidence outside of the affidavit." ***Commonwealth v. Housman,*** 986 A.2d 822, 843 (Pa. 2009), *citing* Pa.R.Crim.P. 203(B). Moreover:

> The Supreme Court of the United States has instructed "that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." Indeed, a magistrate's probable cause determination should receive deference from the reviewing courts. In keeping with the Fourth Amendment's strong preference for warrants, "courts should not invalidate ... warrants by interpreting affidavits in a hyper[-]technical, rather than a commonsense, manner."

***Commonwealth v. Leed***, 186 A.3d 405, 413 (Pa. 2018), *citing **Gates***, 462 U.S. at 236. "[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause where there is some independent corroboration by police of the informant's information." ***Manuel***, 194 A.3d at 1083 (citations omitted).

- 8 -

In concluding the body warrant issued herein was supported by probable cause, the trial court opined:

> Affiant learned by tip that [Appellant] was seen in a white Nissan SUV and . . . was identified as the operator. [Appellant] was reportedly staying with a Lanaja[h] Hodge at a specific address, which the issuing authority would know as being just outside the Borough of Carlisle. The same day the tip was received, affiant obtained a follow-[up] police statement confirming the tip identified person — Lanaja[h] Hodge; her address was confirmed, and another officer identified a vehicle registered to [her] that was seen at the given address. Less than twenty-four (24) hours later, the affiant went to the now verified address and observed a white Nissan Rogue parked in the driveway of the residence. Affiant obtained a search warrant within a half hour based on cumulative collected information. The sum of this information adds up to a fair probability that [Appellant] would be found in that particular place and residence. [T]his probability was not to a mathematic certainly nor was it the most fastidious police work ever done, but the totality of the information gave enough verified detail to believe in the likelihood that [Appellant] would be found at that residence.
>
> If one where to perceive this information from a trained law enforcement perspective, it is known that [Appellant] has a drug delivery history, and the officer is told via tip that [Appellant] is lodging with a specific person at a specific address. The police check out that given address and find a car that is registered to the specific person named in the tip and at the specific address; therefore, these parts of the tip are confirmed. Further, the tip also identifies the vehicle [Appellant] was last seen driving, a white Nissan SUV, and when the police go back to the verified specific address they observe a white Nissan Rogue, a small white SUV. The totality of these circumstances, observations, and verified information leads the affiant to the common sense conclusion that there is probable cause to believe that [Appellant] is NOW most likely at the verified address based on all the multiple confirmations of people, place, and vehicles. This non-hyper-technical interpretation of the affidavit's conclusion is reasonably calculated and sound.

Trial Ct. Op., 7/21/20, at 12-14.

Upon our review of the record, and in particular, the body warrant's affidavit of probable cause, we agree with the trial court's conclusion that the information contained in the warrant was sufficient to provide probable cause that Appellant would be located at 1820 Heishman Gardens. Indeed, the probable cause affidavit states Appellant was wanted not only for fleeing police in October of 2018, but also for a state parole violation related to a felony possession of a firearm. *See* Body Warrant at ¶ 2. The affidavit also summarized Appellant's "lengthy criminal history[,]" which included firearms and drug offenses. *Id.* Although Appellant's purported location was based on an anonymous tip, that same day, the officers corroborated some of the information by confirming that Lanajah Hodge did indeed live at the address provided by the tipster, and that a car registered to Hodge was parked in the driveway. *See id.* at ¶ 3. Less than 24 hours later, the affiant observed a white Nissan SUV — the same color and type of vehicle the tipster stated Appellant was driving — parked in the driveway of 1820 Heishman Gardens. This information was sufficient for the magistrate to make a common-sense determination that Appellant would be found at that address. *See Leed*, 186 A.3d at 413. Thus, no relief is warranted.

Next, Appellant insists the trial court erred when it determined the execution of the warrant was "procedurally lawful." Appellant's Brief at 15. Rather, Appellant argues the officers violated the knock-and-announce rule by entering the residence without providing a sufficient amount of time for Appellant to surrender. *See id.* at 17. He maintains the mere 10 seconds the

officers waited before breaching the entryway was not sufficient time for Appellant and Ms. Hodge to "navigate [the] house at the break of dawn to answer the door[.]" *Id.* at 18. Moreover, Appellant emphasizes that the Commonwealth, which bore the burden of proof, "did not provide testimony as to the substance of the announcement made to persons in the residence." *Id.* at 18.

The knock-and-announce rule "requires that police officers announce their identity, purpose and authority and then wait a reasonable amount of time for the occupants to respond prior to entering any private premises" to execute a search warrant. *Commonwealth v. Frederick*, 124 A.3d 748, 754 (Pa. Super. 2015) (citation and footnote omitted). Pennsylvania Rule of Criminal Procedure 207 provides:

### Rule 207. Manner of Entry Into Premises

(A) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.

(B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances require the officer's immediate forcible entry.

(C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Pa.R.Crim.P. 207(A)-(C).

When considering whether police officers violated Rule 207,

- 11 -

the critical inquiry remains whether sufficient time elapsed in which the police could form "a reasonable belief that the occupants of the premises did not intend to voluntarily or peaceably surrender the premises." In reviewing this question of whether the police waited a reasonable period of time before forcibly entering the premises, we utilize an objective standard as to the reasonable belief of the police. Accordingly, in evaluating an officer's compliance with a knock-and-announce rule we look only to the facts and circumstances with which the officers are faced at the time they make their decisions and act on them.

*Commonwealth v. Walker*, 874 A.2d 667, 673 (Pa. Super. 2005) (citations omitted). In the absence of exigent circumstances, the Pennsylvania Supreme Court has held that a "five to ten-second delay is not a reasonable time for an occupant to respond to police officers' knocking and announcing their purpose." *Commonwealth v. Means*, 614 A.2d 220, 223 (Pa. 1992); *see also Commonwealth v. DeMichel*, 277 A.2d 159, 164 (Pa. 1971) (holding the officers' actions in breaking down the defendant's front door "five to fifteen seconds after announcing their presence and purpose" was unreasonable) (per Roberts, J., with one Justice joining and one Justice concurring in the result).

In finding the officers did not violate the knock-and-announce rule, the trial court opined:

Law enforcement herein complied with the spirit and intent of [Rule 207], although [Appellant] takes issue with the ten seconds before the door was breached. It is unknown what, if any, amount of damage was done from the door breach, but damage is not the primary focus of the Rule; safety of the police and occupants is the most critical purpose. Safety was achieved though the systematic process employed — that did not involve guns-a-blazing entry — indeed, no entry was made into the residence until after completion of "knock-and-announce," followed by "breach," that was ultimately followed by the "call-out" procedure. The warrant execution herein promoted peaceable entry by affording fair warning and safeguarding legitimate privacy expectations to

the degree possible. The efficacy of this "call-out" procedure was ably demonstrated in this case, which does not give rise of suppression of evidence.

Trial Ct. Op. 14-15 (citation omitted).

Upon our review of the record, we agree. Officer Julseth testified at the suppression hearing that the windows to the residence were "draped" such that the officers "couldn't see inside anywhere." N.T., Suppression H'rg, at 15. He explained they did a "knock-and announce" by banging on the door, and waiting "about 10 seconds" before "manually breach[ing] the door open" so that they had "a window . . . to look inside." *Id.  See also id.* at 23 (Officer Julseth testifying under cross-examination, "We didn't enter after ten seconds. We knocked-and-announced, and then we broke the door open in ten seconds about."). Officer Julseth emphasized that the officers remained "outside the threshold" of the residence, and "call[ed]-out" Appellant when he appeared. *Id.* at 15-16. He explained they waited ten seconds "based on the fact that [they] had no vantage point to look inside." *Id.* at 21.

While the ten second delay was brief, we must evaluate the officers' actions based upon the "facts and circumstances [they] faced at the time they [made] their decisions." *See Walker*, 874 A.2d at 673. Although the October 2018 incident involved Appellant fleeing and eluding police officers, the probable cause affidavit for the body warrant also stated Appellant was "wanted by the State Board of Probation and Parole for a parole violation with the original charges being related to firearms possession (felony)." Body Warrant at ¶ 2. Further, it indicated Appellant had a "lengthy criminal history

[which] include[d] charges of robbery, resisting arrest, fleeing and eluding, firearms not to be carried without a license and delivery of a controlled substance." **Id.** Officer Julseth testified that his team was "briefed that it was going to be a high risk search warrant involving possible drugs and a gun." N.T., Suppression Hr'g at 13. Sergeant Bucher explained:

> [T]he search warrant was not for drugs or guns. The reason the special response team was used was based off the criminal history of [Appellant]. There were firearm-related charges in the past, as well as felony drug charges in the past. At any time that there are firearms in a person's criminal history, we typically use a special response team just because there is [a] fair probability that there may be a firearm again in this case.

**Id.** at 24. Thus, based on all the information available to the officers at the time of the execution of the warrant, we agree with the conclusion of the suppression court that the officers "waited a reasonable period before the door was broken down." Memorandum Op. & Order, 11/5/19, at 2; Trial Ct. Op. at 14-15.

To the extent Appellant criticizes the Commonwealth for failing "to present any evidence as to what was announced when the police were executing the [body] warrant[,]"[7] we note the suppression court opined it was "satisfied that [the officers'] presence was properly announced[.]" Memorandum Op. & Order at 1-2. Although Officer Julseth could not recall which officer announced their presence, he did testify that they "knocked-and-announced" before breaching the residence. **See** N.T., Suppression H'rg, at

_____

[7] **See** Appellant's Brief at 18 (footnote omitted).

- 14 -

15, 23. Appellant provides no authority mandating the officers recall the exact words spoken when they announced their presence and purpose. *See* Appellant's Brief at 18. Accordingly, we detect no basis to reverse the trial court's determination that the officers complied with the knock-and-announce rule before breaching the residence where Appellant was staying.[8]

In his final issue, Appellant insists the imposition of a 12-month period of reentry supervision, pursuant to 61 Pa.C.S. § 6137.2, is an unconstitutional *ex post facto* punishment as applied to him. We agree.

When considering a challenge to the constitutionality of a statute, we are presented with "a pure question of law, for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011) (citation omitted).

> "As a threshold matter, a statute is presumed to be constitutional and will only be invalidated as unconstitutional if it clearly, palpably, and plainly violates constitutional rights." Further, a

---

[8] In his brief, Appellant also challenges the officers' protective sweep of the residence, which led to the observation of marijuana blunts in plain view, and the subsequent search warrants. *See* Appellant's Brief at 19-22. However, he failed to raise this issue in either his suppression motion or before the court during the suppression hearing. *See* Appellant's Pretrial Omnibus Motion, 7/15/19, at 2-3 (unpaginated); N.T., Suppression H'rg, at 33-37 (defense counsel's argument). Thus, it is waived for our review. *See Commonwealth v. Banks*, 165 A.3d 976, 980-81 (Pa. Super. 2017) (holding trial court abused discretion in suppressing evidence based on grounds not asserted in defendant's motion to suppress); Pa.R.Crim.P. 581(D) (suppression motion "shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof.").

defendant may contest the constitutionality of a statute on its face or as-applied.

> . . . An as-applied attack . . . does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. . . .

*Id.* (citations omitted).

Article I, Section 17 of the Pennsylvania Constitution prohibits the enactment of any *ex post facto* law. **See** Pa. Const. art. I, § 17. A criminal law is deemed *ex post facto* if "two critical elements" are met: "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." **Commonwealth v. Muniz**, 164 A.3d 1189, 1195-96 (Pa. 2017) (citation omitted).[9]

The statute at issue, 61 Pa.C.S. § 6137.2, was enacted on December 18, 2019. It is included under the provisions concerning the parole power of the Pennsylvania Parole Board. **See** 61 Pa.C.S. § 6137. The statute provides as follows:

> § 6137.2. Reentry supervision
>
> (a) General rule.—**This section applies to persons committed to the department with an aggregate minimum sentence of total confinement** under 42 Pa.C.S. § 9756(b) (relating to sentence of total confinement) **of 4 years or more.** Regardless of the sentence imposed, this section does not apply to persons sentenced to death, life imprisonment, persons

---

[9] Although **Muniz** was a plurality decision, a majority of the justices agreed the registration requirements of the then-applicable sexual offender registration statute violated Pennsylvania's *ex post facto* clause. **See Muniz**, 164 A.3d at 1224 (Wecht, J. Concurring Opinion, joined by Todd, J., agreeing Pennsylvania's sex offender registration statute "violates Article I, Section 17 of the Pennsylvania Constitution").

otherwise ineligible for parole or persons subject to 42 Pa.C.S. § 9718.5 (relating to mandatory period of probation for certain sexual offenders).

(b) Reentry supervision.—**Any person under subsection (a) shall be sentenced to a period of reentry supervision of 12 months consecutive to and in addition to any other lawful sentence issued by the court.**

(c) Parole granted.—Persons who have been granted any period of parole by the parole board during the same period of incarceration shall be deemed to have served the requirements of this section.

(d) Supervision.—A person released to reentry supervision shall be considered to be released on parole.

(e) Imposition.—**The court shall impose reentry supervision in addition to the maximum sentence permitted for the offense for which the defendant was convicted.**

(f) Applicability.—This section shall only apply to persons sentenced after the effective date of this section.

61 Pa.C.S. § 6137.2 (emphases added).

The statute requires a trial court to impose a **mandatory** 12-month period of reentry supervision "in addition to" any aggregate sentence of four or more years' imprisonment. *See* 61 Pa.C.S. § 6137.2(e). Furthermore, it applies to any defendant "**sentenced** after the effective date." 61 Pa.C.S. § 6137.2(f). As the trial court observed in its opinion, "[c]learly, this law changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when it was committed." Trial Ct. Op. at 15 (footnote omitted). Indeed, the Commonwealth concurs that "the application of an additional punishment it the form of a required supervisory period . . . is an *ex post facto* violation." *See* Commonwealth's Brief at 27.

We agree. Here, Appellant was sentenced for acts he committed in February of 2019. The court's imposition of a 12-month period of reentry supervision based upon Section 6137.2 constitutes an additional punishment for acts he committed before the December 2019 enactment of the statute. Thus, as applied to Appellant, the sentencing provision constitutes an unconstitutional *ex post facto* punishment. Accordingly, we vacate the provision of Appellant's sentence imposing a 12-month period of reentry supervision. In all other respects, we affirm.[10]

Judgment of sentence vacated in part and affirmed in part. Jurisdiction relinquished.

Judge Lazarus joins the Opinion.

President Judge Emeritus Stevens Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/19/2021

---

[10] Because our ruling does not disturb the trial court's sentencing scheme, we need not remand for resentencing. ***See Commonwealth v. Thur***, 906 A.2d 552, 570 (Pa. Super. 2006).