J-A18033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL CHEATOM | : | |
| | : | |
| Appellant | : | No. 1851 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 26, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008523-2018

BEFORE: OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED: DECEMBER 15, 2021**

Appellant, Michael Cheatom, appeals from the judgment of sentence
entered on November 26, 2019. We affirm.

The trial court ably summarized the underlying facts and procedural
posture of this case:

> On May 26, 2018, City of Pittsburgh police officers responded
> to [] East Amanda Street for a report of a burglary in
> progress. The complainant, Thelma Green, called police to
> report that her son, [Appellant], had observed three black
> males enter his residence. [Appellant] was not at home at
> the time at which he observed the intruders inside of his
> residence. He observed the burglary via video surveillance
> cameras which were linked to his mobile phone.
>
> Upon arrival, officers made contact with Thelma Green and
> obtained her consent to enter the residence to search for the
> intruders. Officers initially observed that the back door of the
> residence had been kicked in. Once inside, the officers
> separated to sweep the rooms individually. While clearing an
> upstairs bedroom, [Sergeant Thomas Gault] observed two pill
> bottles and an open notebook in plain view atop a dresser.

[Sergeant Gault] observed that the prescription information had been obliterated from each of the bottles and that one of the bottles contained a large number of clearly visible small, black rubber bands. In addition, [Sergeant Gault] observed that the inside of the second pill bottle was coated with a chalky substance. Upon opening the second pill bottle, [Sergeant Gault] discovered an assortment of colored pills which he identified as ecstasy.

Located in close proximity to the two pill bottles was an open notebook which [Sergeant Gault] identified as an "owe" sheet commonly used by illicit drug dealers to record their transactions. The officers subsequently applied for and were granted a warrant to search the residence. During their execution of the search warrant, officers recovered marijuana, a stolen firearm, suboxone, and indicia of residency for [Appellant], in addition to the narcotics and owe sheet they had discovered on the dresser.

[Appellant] filed a pretrial motion to suppress the evidence recovered from his residence, arguing that it was seized as the result of a warrantless search of the premises, to which none of the exceptions to the warrant requirement applied. Following a suppression hearing held on March 25, 2019, [the trial court] denied [Appellant's] motion to suppress and [Appellant's] case proceeded to trial. Prior to commencement of his jury trial, [Appellant] moved to sever the firearm charge from the remaining counts. [The trial court] granted [Appellant's] motion to sever and [Appellant] was thereafter tried on the firearms charge alone. [Appellant's] jury trial commenced on May 31, 2019; however, the jury ultimately deadlocked, and [the trial court] declared a mistrial.

[Appellant's] retrial commenced on August 27, 2019. . . . On August 29, 2019, [Appellant] was found guilty of persons not to possess a firearm.[1] [Appellant] subsequently pled guilty to one count of drug possession and the remaining counts against him were withdrawn. On November 26, 2019, [Appellant] was sentenced to a term of [three to six] years'

_____

[1] 18 Pa.C.S.A. § 6105(a)(1).

incarceration and four [] years' probation, to run concurrent to his term of incarceration.

Trial Court Opinion, 12/28/20, at 1-3.

Appellant filed a timely notice of appeal. He raises two claims to this Court:

[1.] Did the trial court err in denying [Appellant's] motion to suppress evidence where the search warrant authorizing the search of [Appellant's] residence included information that was the product of unconstitutional police activity – namely, evidence of suspected controlled substances and evidence that a written document "was probably an owe sheet" – and without this illegally obtained evidence, the search warrant would not have been supported by probable cause?

[2.] Was the evidence insufficient as a matter of law to support [Appellant's] conviction for possession of firearm prohibited on the theory of constructive possession. The Commonwealth failed to prove beyond a reasonable doubt the necessary elements that [Appellant] had knowledge of the firearm's presence and that he intended to exercise conscious dominion and control over it?

Appellant's Brief at 6.

First, Appellant claims that the trial court erred when it denied his suppression motion. Our standard of review in addressing a challenge to a denial of a suppression motion is well established. As this Court recently stated:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression

- 3 -

court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa. Super. 2021)

(quotations omitted).

Appellant claims that the trial court erred when it denied his motion to

suppress because:

the evidence of suspected narcotics (discovered only after [Sergeant] Gault opened a pill bottle and examined the pills inside) and the written contents of a notebook (which [Sergeant] Gault concluded was evidence of criminal activity only after illegally discovering the contents of the pill bottle and then reading the writings in the notebook) was the product of warrantless searches conducted in the absence of any exception to the warrant requirement.

Appellant's Brief at 21.

We disagree.

Generally, a warrant stating probable cause is required before a police

officer may search for or seize evidence. *Commonwealth v. Bumbarger,*

231 A.3d 10, 19 (Pa. Super. 2020). However:

the plain view doctrine provides that evidence in plain view of the police can be seized without a warrant. The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not

- 4 -

obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item.

Courts have alternatively described the plain view doctrine in terms of a three-prong test: The plain-view doctrine permits the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object. There can be no reasonable expectation of privacy in an object that is in plain view. To judge whether the incriminating nature of an object was immediately apparent to the police officer, reviewing courts must consider the totality of the circumstances. In viewing the totality of the circumstances, the officer's training and experience should be considered.

*Id.* at 19-20 (citations and quotation marks omitted).

In the case at bar, the totality of the circumstances as established at the hearing on the suppression motion supports the conclusion that Sergeant Gault properly seized the pill bottles and ledger book that were in plain view on the bedroom dresser. Accordingly, the subsequently acquired search warrant was based upon constitutionally-seized evidence and was, therefore, proper.

Appellant does not dispute that Sergeant Gault was authorized to be in the bedroom where he viewed the pill bottles and the ledger book, nor does Appellant argue that these items were obscured and could not be seen plainly from Sergeant Gault's lawful vantage point. Instead, this case turns on whether the incriminating nature of these items was readily apparent when Sergeant Gault seized them.

The record establishes that Sergeant Gault is a 24-year veteran with the City of Pittsburgh police force. N.T. Suppression, 3/25/19, at 13. He served in the narcotics division for approximately six years and was involved in approximately 500 narcotics cases. *Id.* at 13-14.

Sergeant Gault testified that, when he entered the bedroom, he noticed that there was not "a lot of clutter" and, therefore, the pill bottles on the dresser "stood out." *Id.* at 24. He immediately observed that the prescriptions were scratched off both bottles. He also noticed that one bottle was coated with a chalky substance and that the other bottle contained black rubber bands. Based upon his experience as a narcotics officer, he knew that black rubber bands are commonly used to package heroin. *Id.* at 17. Sergeant Gault testified that **before** he opened the chalky pill bottle, he observed "the way it was packaged with the . . . prescription ripped off of it. . . . The chalky substance, the way the substance coated the inside you normally don't see in a prescription pill bottle." *Id.* at 25-26. Following these observations, the sergeant testified that, "through my experience, when I saw it, I believed that they were narcotics –- I believed that there was probably narcotics in it of some type." *Id.* at 26.

Sergeant Gault also testified that between the two pill bottles, in plain sight, was an open notebook. Sergeant Gault described the notebook as an "owe sheet," "owe book," or a "ledger book." He stated that this type of notebook is a common way for mid- or small-level narcotic traffickers to keep

track of their product. *Id.* at 18. He testified that the notebook was opened to a page that said "fruit punch, cran grape, orange juice" which was code for common colors of Ecstasy pills. Next to these notations were the numbers "$16,500, $13,500 [and] $11,000". Based on his experience, Sergeant Gault believed that the numbers were associated with narcotics. *Id.* at 20.

Appellant contends that Sergeant Gault determined that the notebook was an "owe sheet" "only after illegally discovering the contents of the pill bottle and then reading the writings in the notebook." Appellant's Brief at 21. Appellant further claims that "[Sergeant] Gault testified credibly and honestly that it was only after considering 'the totality of the circumstances . . . of everything he saw that night that led him to conclude that [the notebook] was probably an owe sheet'. . . . The 'totality of the circumstances . . . of everything [Sergeant] Gault saw that night' necessarily includes the observations he illegally made after warrantlessly opening the chalky pill bottle." Appellant's Reply Brief at 2 (emphasis omitted). Appellant has mischaracterized Sergeant Gault's testimony.

Indeed, nothing in the record establishes the order in which Sergeant Gault observed each item and when he concluded that the notebook related to controlled substances. Instead, the record establishes that "**at some point**" Sergeant Gault saw the notebook which was opened and sitting between the two pill bottles. *Id.* at 18, 29 (emphasis added). When he looked at the page to which the notebook was open, the writing of colors and the

numbers "jumped out" at him. *Id.* at 20. He knew, from his experience, that this was code for narcotics. *Id.* Accordingly, he believed that the notebook was an "owe sheet," "owe book," or "ledger book" that was used to record illegal narcotics sales. *Id.* At no time did Sergeant Gault testify that it was only "after" he opened the chalky pill bottle that he knew that the notebook was used to record illegal narcotics sales.

Based on this record, we conclude that the incriminating nature of the pill bottles and the notebook was readily apparent to Sergeant Gault, an experienced narcotics officer, at the time he observed these items. Accordingly, the items were properly seized and Appellant's first claim on appeal fails.

Next, Appellant claims that the evidence was insufficient to support his conviction for illegally possessing a firearm.

Whether the evidence was sufficient to sustain the charge presents a question of law. *Commonwealth v. Toritto*, 67 A.3d 29 (Pa. Super. 2013) (*en banc*). Our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Walls*, 144 A.3d 926 (Pa. Super. 2016). In conducting our inquiry, we examine:

> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts

regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

**Commonwealth v. Trinidad**, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quotation omitted).

In order to obtain a conviction for illegally possessing a firearm under Section 6105(a)(1),

the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm. The term "firearm" is defined in that [S]ection as any weapon that is "designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon."

**Commonwealth v. Batty**, 169 A.3d 70, 76 (Pa. Super. 2017).

In the instant case, after the search warrant was obtained, police searched the house and located a loaded firearm with an extended magazine within an unlocked compartment in the armrest of a leather couch. N.T. Trial, 8/27/19, at 71-72. Appellant is not legally permitted to possess a firearm. **Id.** at 88.

As Appellant was not in physical possession of the firearm, the Commonwealth was required to establish that he had constructive possession of the seized item to support his conviction.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 813, 820 (Pa. Super. 2013) (quotation marks and citations omitted). Appellant argues that the evidence was insufficient to establish that he knew that the firearm was in the armrest or that he intended to exercise conscious dominion or control over it.

In concluding that the evidence was sufficient to convict Appellant of the firearms violation, the trial court found as follows:

> the Commonwealth presented sufficient evidence to support [Appellant's] conviction. As [Appellant] was not in physical possession of the firearm, the Commonwealth was required to establish that he had constructive possession of the firearm in order to satisfy its burden at trial. . . .
>
> In the instant matter, the jury determined that, when viewed in their totality, the facts and circumstances supported the conclusion that [Appellant] was in constructive possession of the firearm recovered from inside of his residence. During [Appellant's] trial, police officers testified that they recovered the gun from a storage compartment in [Appellant's] couch while executing the search warrant at his Amanda Street residence. [Appellant] did not dispute the Commonwealth's contention that it was, in fact, his residence. To the contrary, [Appellant] stipulated to that fact at trial. In addition, investigating officers testified that, based upon their observations, it did not appear as though anyone other than [Appellant] lived in the house.

Trial Court Opinion, 12/28/20, at 7-8 (citations omitted).

- 10 -

In his defense, Appellant presented evidence that his uncle found the firearm in an alley and stored it temporarily in Appellant's couch while Appellant was out of town and without Appellant's knowledge. The jury heard the testimony from Appellant's uncle and chose not to believe it. It is not our place to refute the jury's credibility determinations.

When viewing all of the evidence in a light most favorable to the Commonwealth, we conclude that the evidence was sufficient to convict Appellant of illegally possessing a firearm. Appellant's claim to the contrary fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge Nichols joins.

Judge Musmanno files a Dissenting Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2021