J-S11014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SPENCER GENE RUDOLPH | : | |
| | : | |
| Appellant | : | No. 699 WDA 2021 |

Appeal from the Judgment of Sentence Entered August 26, 2020
In the Court of Common Pleas of Clarion County
Criminal Division at No(s): CP-16-CR-0000164-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SPENCER GENE RUDOLPH | : | |
| | : | |
| Appellant | : | No. 700 WDA 2021 |

Appeal from the Judgment of Sentence Entered August 26, 2020
In the Court of Common Pleas of Clarion County
Criminal Division at No(s): CP-16-CR-0000165-2019

BEFORE: PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.: **FILED: SEPTEMBER 13, 2022**

In this consolidated case, Spencer Gene Rudolph appeals from his judgment of sentence for, *inter alia*, possession with intent to distribute ("PWID") at criminal docket CP-16-165-CR-2019 and his judgment of sentence for, *inter alia*, drug delivery resulting in the death of William Stout at criminal docket CP-16-164-CR-2019. Rudolph's single issue on appeal is

whether the trial court erred by denying his motion to suppress controlled substances and other contraband found during a search of his house. We agree with Rudolph that the trial court erred, as the record is clear the Commonwealth did not meet its burden at the suppression hearing of establishing the search warrant was lawfully executed. The Commonwealth concedes it made an error at Rudolph's suppression hearing and advocates that we remand for a second suppression hearing to redress that error. We decline to do so, as that would require us to ignore the clear burden the Commonwealth carried - but failed to meet - at Rudolph's suppression hearing. Instead, we vacate Rudolph's judgments of sentence, reverse the suppression order and remand for proceedings consistent with this Memorandum.

When this Court reviews a trial court's denial of a suppression motion, as we are tasked to do in this case, we are limited to reviewing only the evidence presented at the suppression hearing. *See Commonwealth v. Carey,* 249 A.3d 1217, 1223 (Pa. Super. 2021). Because the Commonwealth prevailed before the suppression court, we are further limited to considering only the evidence presented by the Commonwealth and that evidence presented by Rudolph that remains uncontradicted when read in the context of the record as a whole. *See id.*

Here, the trial court held a joint suppression hearing for both docket numbers on October 7, 2019. There was little, if any, testimony relevant to

the instant appeal at the suppression hearing. However, the Commonwealth did incorporate the notes of testimony from Rudolph's joint preliminary hearing held on April 9, 2019 into the record of the suppression hearing.

At the preliminary hearing, the Chief of Police of Clarion Borough, Chief William Peck, was the only person to testify. Peck confirmed he began investigating the death of Stout from a fentanyl overdose on November 20, 2018. **See** N.T., 4/9/19, at 22-23. Peck recounted that he looked through Stout's phone and saw a contact for "Spencer." **See id.** at 25-26. He testified he had separately received information that Rudolph was dealing drugs out of his house, **see id.** at 25, and that a "light bulb went off" connecting that information to the "Spencer" name in Stout's phone. **Id.** at 26. He entered the phone number associated with "Spencer" in Stout's contact list into Facebook Messenger, and Rudolph's Facebook profile emerged. **See id.** At that point, Peck began focusing his investigation into Stout's death on Rudolph. **See id.**

Peck testified he conducted surveillance of Rudolph's house and "observed numerous vehicles com[e] to the house, go inside, come back out within minutes and leave." **Id.** at 11. Peck recounted that he applied for a search warrant for Rudolph's house on February 11, 2019, and the warrant was issued that same day. **See id.** at 6-7, 13. The warrant was then executed on February 13, 2019. **See id.** at 7. Regarding the warrant's execution, Peck testified he waited in his police vehicle while the Pennsylvania State Police

"SWAT" team executed the warrant at approximately 6:05 a.m. on February 13, 2019. *See id.* at 14-15. When asked if the state police knocked or waited for a response, Peck replied:

A. I was in a vehicle.

Q. So you don't know?

A. The protocol is they knock and announce. I heard them verbally yelling stuff, so that would be announcing to me, and they were yelling prior to going in.

Q. Did you witness anybody knocking, or no?

A. I did not.

*Id.* at 15-16.

Peck testified the state police made a forced entry and found Rudolph inside the house. *See id.* at 16-17. Peck entered the house afterwards. During a search of the house, the police found multiple controlled substances and drug paraphernalia, including one-half to three-quarters of a pound of marijuana packaged in different amounts, suspected cocaine, as well as stamp bags and other packaging material. *See id.* at 8. Peck interviewed Rudolph, and according to Peck, Rudolph told Peck that he both used and sold drugs. *See id.* at 9, 19-20. Rudolph also told Peck he had worked with Stout. Peck testified that Rudolph originally denied selling heroin or fentanyl to Stout, but then admitted to selling him five stamp bags of heroin on November 19, 2018. *See id.* at 28. Peck recounted that Stout was found dead inside his home on November 20, 2018. *See id.* at 33.

Peck proceeded to testify about his subsequent investigation into Stout's death and drug activity involving Rudolph. That investigation "revealed a network of drug distribution that spanned multiple counties," Appellant's Brief at 8, and included Rudolph as a "runner" for that network.[1]

These two events that Peck testified to at the preliminary hearing - the search of Rudolph's house and the subsequent investigation into the larger drug network and its connection to Stout's death - led to two separate filings of charges against Rudolph. First, following the search of Rudolph's house, Rudolph was charged on February 15, 2019 with multiple drug offenses at criminal docket 165-CR-2019. Specifically, he was charged with four counts of PWID, two counts of conspiracy, three counts of possession of a controlled substance and one count of possession of paraphernalia. Then, on March 15, 2019, Rudolph was charged at criminal docket 164-CR-2019 with drug delivery resulting in death, corrupt organizations, conspiracy to commit corrupt organizations, criminal use of a communications facility and involuntary manslaughter. All of the charges in both cases were held for court following the preliminary hearing.

_____

[1] Although the details of this investigation are not necessary to the resolution of this appeal, Peck did testify about those details at the preliminary hearing as they were clearly relevant to his charges at criminal docket 164-CR-2019. *See id*. at 30-70. The trial court also summarized the investigation in its opinion supporting its motion to deny the suppression motion. *See* Trial Court Opinion and Order, 11/7/19, at 4-5.

Rudolph filed several pre-trial motions: 1) a petition for writ of *habeas corpus*; 2) a motion to suppress his statement - *corpus delicti*; and 3) a motion to suppress evidence based on an unlawful search and seizure. The only motion at issue in this appeal is the third, the motion to suppress based on an unlawful search and seizure. In that motion, Rudolph challenged the search warrant for his house on several fronts. He argued that the search warrant was not supported by probable cause, that the warrant was defective as it did not mark the date and time of its issuance, and that the search warrant had been unlawfully executed. As to this last assertion, the suppression motion specifically averred the police "failed to provide [Rudolph] with sufficient time to open the door and allow them to enter," and that the police entry was therefore unreasonable under the "knock and announce" rule. Motion to Suppress - Unlawful Search and Seizure, 8/14/19, at 4 (unpaginated).

The trial court, as noted above, held a joint suppression hearing on all three motions on October 7, 2019. At the beginning of the hearing, the Commonwealth stated:

> [T]here are three separate motions that were filed. [One] motion was the motion to suppress unlawful search and seizure. That was based on a warrant that was issued for the search in [ ] Rudolph's residence in which [Rudolph argued that the warrant] was not supported by probable cause, and therefore, the fruits of that search shall be suppressed. That would be the four corners of the search warrant issue, so I'll just move to admit Commonwealth's Exhibit A which is that search warrant. It is two pages: the front cover and the affidavit of probable cause.

N.T., 10/7/19, at 3-4. When defense counsel was asked if there was any objection, he replied there was not. ***See id.*** at 4.

The court admitted the search warrant into evidence. The affidavit of probable cause provided more information supporting the search warrant in addition to that testified to by Peck at the preliminary hearing. For instance, Peck stated in the affidavit that a confidential informant had initially provided Peck with the information that Rudolph was dealing drugs out of his house, and that there were text messages between the confidential informant and Rudolph. Peck also elaborated on the surveillance he had conducted on Rudolph's house. He recalled that on February 8, 2019, he had seen three vehicles pull up to Rudolph's house in a manner that he described as consistent with drug-related activity. Lastly, Peck averred in the affidavit that on February 9, 2019, the police contacted a confidential informant to arrange a controlled drug buy with Rudolph, and the confidential informant then purchased ten stamp bags of purported heroin/fentanyl inside of Rudolph's house that same day.

After the search warrant was admitted into evidence, Peck was called to testify at the suppression hearing. As with the preliminary hearing, Peck was the only witness the Commonwealth called to testify at the suppression hearing. Peck's suppression hearing testimony, however, was not relevant to the motion to suppress based on an unreasonable search and seizure. Instead,

Peck's testimony primarily focused on a discussion of stamp bags and their use in drug-related activity.

Following the suppression hearing, the court asked the parties for briefs. In its brief-in-opposition, the Commonwealth recognized Rudolph had specifically argued in his suppression motion and his brief-in-support that the execution of the search warrant had violated the "knock and announce" rule. The Commonwealth also acknowledged it had relied on the four corners of the search warrant at the suppression hearing to establish the constitutionality of the search warrant. It recognized in its brief, however, that this reliance on the search warrant itself was not sufficient to establish that the warrant had been lawfully executed and that it had "mistakenly overlooked" Rudolph's issue regarding the warrant's execution.

Despite its mistake, the Commonwealth noted there had been testimony at the preliminary hearing that briefly touched on the execution of the warrant. The Commonwealth argued that such testimony, which had been incorporated into the suppression hearing record, was sufficient to refute Rudolph's claim that the police had violated the "knock and announce" rule. In the alternative, the Commonwealth asserted that because the issue was "mistakenly not addressed at the time of the [suppression] hearing," the court should essentially remand for a second suppression hearing in the event that it "need[ed] further testimony before making a decision" on Rudolph's challenge

to the constitutionality of the warrant's execution. Commonwealth's Brief in Opposition to Defendant's Omnibus Pretrial Motions, 10/28/19, at 9-10.[2]

The trial court did not remand for further testimony. Instead, it denied all three of Rudolph's pre-trial motions. In denying the motion to suppress based on an unreasonable search and seizure, the court found the search warrant had been supported by probable cause and that it had been properly executed. As for the latter, the court concluded Peck's testimony that the protocol for the state police was to "knock and announce" and that the police had yelled before entering Rudolph's house was sufficient to establish there had been no violation of the "knock and announce" rule.

The matters proceeded to two separate jury trials. At docket 165-CR-2019, the jury found Rudolph guilty of two counts of PWID, three counts of possession of a controlled substance and one count of possession of drug paraphernalia. At docket 164-CR-2019, the jury convicted Rudolph of all

---

[2] The Commonwealth asserted in its brief-in-opposition that the defense had stipulated that the four corners of the search warrant would be sufficient to address the merits of his suppression motion based on an unreasonable search and seizure. However, the record of the suppression hearing only reveals defense counsel declining to object to the Commonwealth's request to admit the search warrant for purposes of establishing the probable cause component of Rudolph's suppression motion. The Commonwealth also asserted in its brief-in-opposition that the parties had agreed that the trial court should reopen the record and essentially hold a second suppression hearing if the court deemed it necessary in order to address Rudolph's "knock and announce" claim, but the Commonwealth does not point to any place in the record showing such an agreement. In any event, the Commonwealth does not make either of these assertions on appeal.

counts with the exception of involuntary manslaughter, which had been *nolle prossed*. The court held a joint sentencing hearing for both dockets on August 26, 2020. The court sentenced Rudolph at both cases to an aggregate term of imprisonment of 169 months to 392 months. Rudolph appealed from both judgments of sentence, and this Court *sua sponte* consolidated the two. Rudolph raises the following singular issue in both appeals:

> Whether the lower court erred in denying [Rudolph's] suppression motion related to a search warrant for one or more of [three] reasons: 1) lack of probable cause for issuance; 2) defect in application and approval; and 3) violation of Pa.R.Crim.P. 207 [codifying the "knock and announce" rule].

Appellant's Brief at 4 (unnecessary capitalization omitted).

When this Court reviews a challenge to the denial of a suppression motion, we look to see whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. **See Carey**, 249 A.3d at 1223. We are bound by the suppression court's factual findings if those findings are supported by the record. **See id.** We are not, however, bound by the suppression court's legal conclusions. **See id.** To the contrary, it is our duty to determine if the suppression court properly applied the law to the facts. **See id**. On review, we remain mindful that it is the Commonwealth which bears the burden at a suppression hearing to prove by a preponderance of the evidence that the evidence sought to be suppressed by the defendant was not obtained in

violation of the defendant's rights. ***See Commonwealth v. Kane***, 210 A.3d 324, 329 (Pa. Super. 2019).

With these standards in mind, we address the third part of Rudolph's issue first as it is this particular claim that we find merits relief. There, Rudolph argues the trial court erred by finding the Commonwealth met its burden of refuting Rudolph's assertion that the police violated Pa.R.Crim.P. 207, commonly referred to as the "knock and announce" rule, when executing the search warrant on his house. We agree.

Rule 207 codifies the "knock and announce" rule:

(A) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.

(B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances require the officer's immediate forcible entry.

(C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Pa.R.Crim.P. 207.

As the text of Rule 207 makes clear, the rule does not actually impose any specific obligation on the police to knock, despite frequently being referred to as the "knock and announce" rule. ***See Commonwealth v. Frederick***, 124 A.3d 748, 754 (Pa. Super. 2015). What Rule 207 does require, however, is

that the police announce their identity, purpose and authority - and then wait a reasonable amount of time for the occupants to respond prior to forcibly entering the premises. ***See id.***

It is this second part, which is embodied in section (B) of Rule 207, which Rudolph argues was not met here. He states:

> A review of the testimony presented at the suppression hearing shows no testimony related to the execution of the search warrant. We are left, then, with the testimony from the preliminary hearing, which was admitted as an exhibit at the suppression hearing. [There], the affiant testified, 'the protocol is they knock and announce. I heard them verbally yelling stuff, so that would be announcing to me, and they were yelling prior to going in.' The lower court mistakenly concluded this testimony satisfied Pa.R.Crim.P. 207. While [Rudolph] concedes this may satisfy section (A) of the Rule, it completely ignores section (B). The preliminary hearing testimony did not speak at all to the amount of time that elapsed between the announcing and the entry.

Appellant's Brief at 21.

We agree. As an initial matter, we question whether Peck's fleeting testimony that the state police's general protocol is to "knock and announce" and that the police officers executing the search warrant in this case engaged in some sort of yelling before entering Rudolph's house was sufficient to support a finding that the officers made a constitutionally-valid announcement of their identity, purpose and authority. Even if we were to conclude that it was sufficient for that purpose, the Commonwealth still did not present any testimony at the suppression hearing regarding the time the police waited between this yelling and their entry, if any time at all. It is undisputed the

Commonwealth did not call the state police officers who actually executed the warrant to testify at the suppression hearing. This omission left only Peck's testimony from the preliminary hearing, which did not touch upon the amount of time that had elapsed between any announcement the state police officers may have made and their forced entry into Rudolph's home just minutes after six in the morning.

Without any testimony regarding this amount of time in the record, we are obviously unable to ascertain whether that time was reasonable under the circumstances of this case. This Court has made clear that when evaluating whether the police waited a reasonable amount of time before forcibly entering a property, we must look to the specific facts and circumstances the police officers faced at the time their decision to enter was made. **See Carey,** 249 A.3d at 1227. The Commonwealth simply did not provide any of those facts and circumstances regarding the entry into Rudolph's home at the suppression hearing, as was its clear burden to do. We therefore agree with Rudolph that the Commonwealth failed to meet its burden of proving that, contrary to what Rudolph explicitly alleged in his suppression motion, the police complied with Rule 207 when executing the warrant to search his house.[3]

_____

[3] We recognize the Commonwealth may meet its burden of disproving a claim that the police violated the "knock and announce" rule either by showing compliance with the rule or, in the alternative, by showing there were exigent circumstances exempting the police from compliance. **See Frederick**, 124 A.3d at 755 (noting this standard and listing the four recognized exigent

The Commonwealth once again acknowledges in its appellate brief that the issue "of whether 'knock and announce' was violated was not addressed" and that it "mistakenly overlooked [this issue] at the time of the suppression hearing." Commonwealth's Brief at 4, 10. The Commonwealth argues the "proper remedy for such an oversight would be to remand the case for another suppression hearing." *Id.* at 18. It points to **Commonwealth v. Ryan**, 419 A.2d 762 (Pa. Super. 1980), as support for its argument that a second suppression hearing is the proper remedy for its failure to meet its burden of establishing at the suppression hearing that the police did not violate the "knock and announce" rule.

In **Ryan**, the police executed two separate search warrants on Ryan's place of business. Ryan sought to suppress the evidence obtained pursuant to those search warrants, arguing, *inter alia*, that the confidential informant on whose information the first search warrant was issued was not reliable. **See id.** at 1346. At the suppression hearing, the Commonwealth produced the search warrants and accompanying affidavits but did not produce any witnesses or testimony. **See id.** The trial court denied Ryan's suppression motion. Ryan appealed, asserting the Commonwealth's failure to produce

_____

circumstances justifying noncompliance with the "knock and announce" rule). Although the Commonwealth does not argue there were exigent circumstances present here, we note that the sparse record regarding the execution of the search warrant would not support a finding that there were any such exigent circumstances facing the state police when they entered Rudolph's house.

anything other than the search warrants deprived him of his right to challenge the veracity of the information in the warrants. ***See id.*** at 1347. In response, the Commonwealth relied on Pa.R.Crim.P. 2003(b), subsequently re-numbered to Pa.R.Crim.P. 203(D), to argue that it was only required to produce the search warrant affidavit at the suppression hearing; it was Ryan's burden to produce any other evidence he deemed relevant. ***See id.***

The ***Ryan*** panel held that pursuant to Pa.R.Crim.P. 323(h), subsequently re-numbered to Pa.R.Crim.P. 581(h), the Commonwealth bore the burden "of establishing the validity of the search warrant and the burden is not carried by merely introducing the search warrant and affidavit with no supporting testimony[.]" ***Id.*** at 1348. As the Commonwealth correctly points out, this Court, after our Supreme Court issued an order remanding the matter for clarification, remanded to the trial court for a new suppression hearing. ***See Commonwealth v. Ryan***, 414 A.2d 37 (Pa. 1980); 419 A.2d 762 (Pa. Super. 1980). Essentially, the ***Ryan*** Court found that the Commonwealth had committed a good faith mistake of law, but a mistake nonetheless, in interpreting Rule 2003. It therefore remanded the case to the suppression court to allow the Commonwealth, now aware of the proper reading of Rule 2003, an opportunity to meet its burden.

The circumstances in ***Ryan*** are clearly different from those here, starting with the fact that ***Ryan*** is not a "knock and announce" case. The Commonwealth here makes no argument that it mistakenly believed the four

corners of the search warrant were, or could be, sufficient to prove the police complied with the "knock and announce" rule. In fact, as noted above, it acknowledges just the opposite, admitting it mistakenly overlooked Rudolph's claim of a "knock and announce" violation when it relied on the four corners of the search warrant at the suppression hearing. This represents mere carelessness, not a good faith mistake of law.

The Commonwealth also does not argue that it was unaware of its burden as it relates to the "knock and announce" rule or that such a burden was not clearly defined. To be sure, in cases involving the "knock and announce" rule, such as the instant one, we have stated:

> Our Supreme Court has determined that the remedy for noncompliance with the knock and announce rule is **always suppression.**
>
> During a suppression hearing, the Commonwealth bears the burden of proving the police seized evidence without violating [the] defendant's constitutional rights. The Commonwealth can satisfy its burden by establishing either that the police complied with the knock and announce rule or that the circumstances satisfied an exception.

**Frederick**, 124 A.3d at 755 (internal citations and quotation marks omitted) (some emphasis removed).

Finally, we note that **Ryan** may no longer represent the law in Pennsylvania. In 2013, our Supreme Court opined that, assuming Pa.R.Crim.P. 581(J) allows the Commonwealth to supplement the record after the suppression hearing has closed, it could only do so with evidence that was previously unavailable. **See In re L.J.**, 79 A.3d 1073, 1084 n.14 (Pa. 2013).

We have already determined the Commonwealth failed to meet its burden of showing the state police officers did not violate the "knock and announce" rule, and in turn Rudolph's constitutional rights, when the officers forcibly entered Rudolph's house. The Commonwealth was aware of its burden, and it admirably recognizes it made a mistake in its efforts to meet that burden at the suppression hearing. However, the remedy for that mistake cannot, under the circumstances present here, be a remand for a second suppression hearing. Such a remedy would unjustifiably afford the Commonwealth a second opportunity to attempt to produce the substantive evidence it simply made no attempt to produce at the time it was undisputedly required to do so. The remedy must be suppression. **See id**.; **see also Commonwealth v. Iacavazzi**, 443 A.2d 795, 798 (Pa. Super. 1981) (holding that the Commonwealth was not entitled to a second suppression hearing to cure its omission of proof that a search warrant was not properly issued or executed, when the defendant made specific objections to the warrant's issuance and execution in his suppression motion and the Commonwealth produced no evidence at the suppression hearing to dispute those objections).

As we find the trial court erroneously denied Rudolph's suppression motion based on the Commonwealth's failure to produce evidence disproving Rudolph's claim that the police violated the "knock and announce" rule, we need not address Rudolph's remaining grounds for challenging the denial of this suppression motion.

   Judgments of sentence vacated. Order denying suppression of evidence obtained during the search of Rudolph's home reversed. Remanded to the trial court to conduct proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  09/13/2022